JASON R. THORNTON, SBN 185637
E-MAIL: jthornton@ftblaw.com
PATRICK W. MCMANUS, SBN 312290
E-MAIL: pmcmanus@ftblaw.com

**FINCH, THORNTON & BAIRD, LLP**

ATTORNEYS AT LAW
4747 EXECUTIVE DRIVE – SUITE 700
SAN DIEGO, CALIFORNIA 92121-3107
TELEPHONE: (858) 737-3100
FACSIMILE: (858) 737-3101

Attorneys for Defendant and Counterclaimant
Halbert Construction Company, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the Use and Benefits of: | CASE NO:  3:17-cv-00803-CAB-WVG |
| McCULLOUGH PLUMBING, INC., a California corporation; | HALBERT CONSTRUCTION COMPANY, INC.'S FIRST AMENDED COUNTERCLAIM |
| Plaintiff, | Assigned to: Hon. Cathy Ann Bencivengo, Courtroom 4C Hon. William V. Gallo, Second Floor |
| v. | |
| HALBERT CONSTRUCTION COMPANY, INC., a California corporation; WESTERN SURETY COMPANY, a South Dakota corporation; and DOES 1-100, inclusive, | Complaint Filed:  April 20, 2017 Trial Date:  Not Set |
| Defendants. | |
| HALBERT CONSTRUCTION COMPANY, INC., a California corporation; | |
| Counter-Claimant and Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, for the Use and Benefit of: McCULLOUGH PLUMBING, INC., a California corporation; CTE, CAL, INC., a California corporation; THE GUARANTEE COMPANY OF NORTH AMERICA USA; a Michigan corporation; and | |

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM                    3:17-cv-00803-CAB-WVG

ROES 1-100, inclusive,

Counter-Defendants
and Defendants.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter under 40 U.S.C. § 3133 (Miller Act).  This Court has supplemental jurisdiction over the pendant claims and compulsory counterclaims pursuant to 28 U.S.C. § 1367.

2.     Venue of this action in this Court is proper as the parties agreed by contract that disputes were to be litigated in San Diego, California.  Venue in the Court is also proper under 28 U.S.C. § 1391(b) and (c) because defendant Halbert Construction Company, Inc. ("Halbert"), maintains its principal place of business within the Southern District of California.

## THE PARTIES

3.     Counterclaimant and plaintiff Halbert is, and at all times was, a California corporation authorized to do business in the State of California and licensed by the State of California to perform the work described below.

4.     Halbert is informed and believes defendant The Western Surety Company, erroneously sued as Western Surety Company ("Western"), is a South Dakota corporation authorized to do business in the State of California.

5.     Halbert is informed and believes counterdefendant McCullough Plumbing, Inc. ("McCullough"), is a California corporation doing business in and having its principal place of business in the County of San Diego, California.

6.     Halbert is informed and believes defendant The Guarantee Company of North America USA ("The Guarantee Company"), is a corporation organized and existing under and by virtue of the laws of the State of Michigan and authorized to issue bonds in the State of California.

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM                    3:17-cv-00803-CAB-WVG

7.     Halbert is informed and believes defendant CTE, Cal, Inc. ("CTE"), is a California corporation doing business in and having its principal place of business in the County of Sacramento, California.

8.     Halbert does not know the true names or capacities of defendants sued as ROES 1 through 100 and, therefore, sues them by fictitious names. Halbert is informed and believes that ROES 1 through 100 are in some way responsible for the events and damages described in this counterclaim. Halbert will seek leave to amend this counterclaim when the true names or capacities of these defendants have been ascertained.

9.     At all times mentioned, each of McCullough, The Guarantee Company, CTE, and/or ROES 1-100 acted as an agent, principal, representative, alter ego, and/or employee of the others and each was at all times acting within the course and scope of said agency, representation and/or employment and with the permission of the others.

### DINING FACILITY AND
### ADMINISTRATION BUILDING PROJECT BACKGROUND

10.     Halbert was hired by the Army Corps of Engineers to act as its general contractor for construction of a dining facility and administration building at the Presidio of Monterey, Monterey, California ("the Project").

11.     On January 27, 2014, Halbert entered into a subcontract with McCullough (the "McCullough Subcontract"). Under the McCullough Subcontract, McCullough was required to perform all work necessary for plumbing in accordance with the government-approved plans and specifications, and as required for a complete and operational system acceptable to both Halbert and the government. A true and correct copy of the McCullough Subcontract is attached as Exhibit 1.

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

3

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM                3:17-cv-00803-CAB-WVG

12.     On or about May 13, 2014, McCullough, as principal, and The Guarantee Company, as surety, issued a performance bond (the "McCullough Bond"), whereby The Guarantee Company bonded McCullough for the performance of the McCullough Subcontract, including the plumbing work for the Project, in the amount of $1,079,375.00.  A true and correct copy of the McCullough Bond is attached as Exhibit 2.

13.     On or about June 2, 2014, McCullough began work on the Project. On or about October 27, 2015, another subcontractor, in the course of erecting structural steel, damaged the plumbing installed by McCullough.  Halbert directed McCullough to proceed with fixing the damage.  Halbert issued a change order to McCullough and a deductive change order to the structural steel subcontractor.  Halbert paid McCullough for the additional work and back charged the structural steel contractor for the repairs.

14.     On or about December 9, 2016, Halbert notified McCullough that a substantial amount of the work performed by McCullough was defective.  Much of the pipe work was broken or had low spots.  In many areas, McCullough had failed to install the work in compliance with requirements of the McCullough Subcontract and the Project plans and specifications.

15.     On or about December 22, 2016, Halbert notified McCullough, again, of the numerous defective work items and demanded McCullough remedy the situation.  Halbert did not receive a response.

16.     On or about December 28, 2016, Halbert notified McCullough and The Guarantee Company that McCullough was in default of the McCullough Subcontract.

17.     On or about January 10, 2017, Halbert notified McCullough that McCullough failed to make any progress on the Project during January 2017. / / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

4

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM          3:17-cv-00803-CAB-WVG

18.    On or about January 30, 2017, McCullough abandoned the Project in breach of the McCullough Subcontract.  Halbert was forced to engage another subcontractor to repair and complete the defective plumbing work on the Project that McCullough abandoned.  Halbert paid for this work in addition to the amounts already paid to McCullough.

19.    On or about March 1, 2017, Halbert notified The Guarantee Company of McCullough's default and requested The Guarantee Company assume completion of the Project in accordance with the McCullough Bond.  The Guarantee Company has refused to honor its obligations under the McCullough Bond.

## PROJECT INSPECTION BACKGROUND

20.    On or about November 11, 2013, CTE offered to provide Halbert with Materials Testing and Special Inspection Services for the Project.  CTE's November 11, 2013 offer is memorialized in the Cost Proposal for Materials Testing/Special Inspection Services (the "Cost Proposal") sent by CTE to Halbert on November 11, 2013.  A true and correct copy of the Cost Proposal is attached as Exhibit 3.

21.    The Cost Proposal contained statements outlining specific services CTE promised to perform for Halbert, including "Materials Testing, Special Inspection and Engineering Support Services …."

22.    The Cost Proposal assured Halbert that CTE's "[t]esting and [i]nspection procedures are supervised by a staff of experienced professionals …."  CTE's offer in the Cost Proposal further provided that "[b]ased on [CTE's] qualifications and strong commitment to [Halbert's] quality control/engineering needs, CTE Cal, Inc. will provide our services for Halbert Construction Co[.] in a cost effective manner."

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

5

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM          3:17-cv-00803-CAB-WVG

23.     On or about November 26, 2013, Halbert accepted CTE's offer contained in the Cost Proposal.   Halbert's acceptance of CTE's offer is memorialized in the Letter of Intent to Award Subcontract (the "Letter of Intent"), sent by Halbert to CTE on November 26, 2013.  A true and correct copy of the Letter of Intent is attached as Exhibit 4.

24.     The Letter of Intent demonstrated Halbert's assent to the terms contained in the Cost Proposal.  The Letter of Intent provides it was Halbert's intent to "incorporate the services of [CTE] based on [CTE's] proposal dated 11-11-13 … for the following: Testing and Inspection."  The Letter of Intent also sets forth directions for CTE to obtain copies of the Project's plans and take other necessary steps prior to commencing work on the Project.

25.     Upon Halbert's acceptance of CTE's offer on November 26, 2013, CTE and Halbert entered an agreement in which CTE promised to provide materials testing, special inspection, and engineering support services for the Project (the "CTE Subcontract").  Pursuant to its offer that became part of CTE Subcontract, CTE promised to provide qualified inspectors to routinely inspect work on the Project.

26.     However, despite CTE engaging in inspections, CTE did not notify Halbert of any deficiencies in McCullough's work until at least November 2016, at which time the defective work had already been performed.  Despite CTE's obligation to inspect McCullough's work, McCullough performed defective work that failed to adhere to the Project's plans and specifications.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract as to McCullough)

27.     Halbert realleges and incorporates by reference paragraphs 1 through 26, above, as though set forth in full at this point.

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM                    3:17-cv-00803-CAB-WVG

28.     The McCullough Subcontract required McCullough to, among other things:

> Perform all work necessary for Plumbing in accordance with the Government approved plans and specifications…, including prevailing wages, taxes, and any other materials, material unloading, equipment, labor and miscellaneous items, as required per ALL the Contract Documents (Plans and Specifications) as they apply to the scope of work, and as required for a complete and operational system acceptable to both Halbert Construction Company and the Owner.

Exhibit 1, ¶ B.

29.     In the McCullough Subcontract, McCullough agreed that, among other things, "all Materials furnished will meet the 'Buy American Act.'" Exhibit 1, ¶ B.3.

30.     McCullough also agreed that its scope of work "shall include but is not limited to that work reasonably necessary for a complete and proper Project or which is necessary to have a properly working and totally acceptable system. All work covered by this Subcontract shall be performed in a skillful and workmanlike manner with material, equipment, etc. being both new and of the best kind and grade for the purpose intended." Exhibit 1, ¶ H. 1.2.

31.     Halbert performed all obligations required of it under the McCullough Subcontract or was excused from performance.

32.     McCullough breached the McCullough Subcontract by, among other things, failing to perform plumbing work in accordance with the Project plans and specifications, failing to perform the work in a good and workmanlike manner, and otherwise failing to perform its work at the highest quality and in strict accordance with the description of work, in the most sound and workmanlike and substantial manner.

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM                    3:17-cv-00803-CAB-WVG

33.     As a result of McCullough's breaches of the McCullough Subcontract, Halbert sustained damages to correct the defects in McCullough's work, including the costs to engage another plumbing subcontractor to repair and finish the work that McCullough abandoned, in an amount according to proof.

### SECOND CLAIM FOR RELIEF

### (Breach of Express Warranty as to McCullough)

34.     Halbert realleges and incorporates by reference paragraphs 1 through 33, above, as though set forth in full at this point.

35.     Pursuant to the McCullough Subcontract, McCullough made the following express warranty: "All work covered by this Subcontract shall be performed in a skillful and workmanlike manner with material, equipment, etc. being both new and of the best kind and grade for the purpose intended."  Exhibit 1, H. 1.2.

36.     McCullough breached this express warranty by, among other things: (1) performing work improperly and below the minimum standards of care; (2) failing to perform plumbing work in a skillful and workmanlike manner, and (3) failing to comply with all governing standards, codes and practices as related to the practice of plumbing and specifically the scope of work as defined in the McCullough Subcontract.  As a result of McCullough's errors, Halbert was forced to engage another plumbing contractor to repair and complete the work that McCullough improperly performed and then abandoned.

37.     As a direct and proximate result of McCullough's breach of express warranty, Halbert sustained damages to correct the defects in McCullough's work, in an amount according to proof.

/ / / / /

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

8

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM                    3:17-cv-00803-CAB-WVG

### THIRD CLAIM FOR RELIEF

### (Enforcement of Performance Bond Against The Guarantee Company)

38.     Halbert realleges and incorporates by reference paragraphs 1 through 37, above, as though set forth in full at this point.

39.     The McCullough Bond incorporates the terms of the McCullough Subcontract and names Halbert as the obligee.  The McCullough Bond requires The Guarantee Company to, among other things, tender payment to Halbert as required to complete the McCullough Subcontract.

40.     McCullough breached the McCullough Subcontract as described above.  Halbert performed or was excused from performing all of its obligations under the McCullough Subcontract and the McCullough Bond.

41.     The Guarantee Company has breached the McCullough Bond by, among other things, failing and refusing to compensate Halbert for its additional costs incurred due to McCullough's breach of the McCullough Subcontract and/or refusing to complete the work.

42.     As a direct and proximate result of The Guarantee Company's breach of the McCullough Bond, Halbert has incurred costs to complete the McCullough Subcontract work and to repair unsatisfactory work performed by McCullough, in an amount according to proof.

### FOURTH CLAIM FOR RELIEF

### (Breach of Contract as to CTE)

43.     Halbert realleges and incorporates by reference paragraphs 1 through 42, above, as though set forth in full at this point.

44.     The CTE Subcontract required CTE to, among other things: "provide Materials Testing, Special Inspection and Engineering Support Services during construction of the subject project."  Exhibit 3.

/ / / / /

9

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM          3:17-cv-00803-CAB-WVG

45.     Halbert performed all obligations required of it under the CTE Subcontract or was excused from performance.

46.     CTE breached the CTE Subcontract by, among other things, failing to adequately inspect and document McCullough's deficient work. McCullough's work was defective and caused Halbert to suffer damages, as discussed above.  CTE shares responsibility for Halbert's damages because a vast portion of the damages would have been avoided if CTE had properly inspected McCullough's work.

47.     As a result of CTE's breach of the CTE Subcontract, Halbert sustained damages, including the costs to engage another plumbing subcontractor to repair McCullough's work that CTE should have properly supervised and inspected, in an amount according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Halbert prays for judgment against McCullough, The Guarantee Company, CTE, and ROES 1-100 as follows:

ON THE FIRST CLAIM FOR RELIEF

(1)     Damages, in an amount according to proof.

ON THE SECOND CLAIM FOR RELIEF

(1)     Damages, in an amount according to proof.

ON THE THIRD CLAIM FOR RELIEF

(1)     Damages, in an amount according to proof.

ON THE FOURTH CLAIM FOR RELIEF

(1)     Damages, in an amount according to proof.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

10

HALBERT CONSTRUCTION COMPANY, INC.'S
FIRST AMENDED COUNTERCLAIM               3:17-cv-00803-CAB-WVG

1   ON ALL CLAIMS FOR RELIEF

2       (1)   For the costs of suit incurred herein;

3       (2)   For pre and post-judgment interest on all monies due; and

4       (3)   For such other and further relief as this Court may deem just and

5   proper.

6                        **DEMAND FOR JURY TRIAL**

7       Halbert requests trial by jury.

8   DATED:  January 16, 2018              Respectfully submitted,

9                                        FINCH, THORNTON & BAIRD, LLP

10

11                                       By:___*/s/Jason R. Thornton*_____
                                               JASON R. THORNTON
12                                             PATRICK W. MCMANUS
                                         Attorneys for Defendant and
13                                       Counterclaimant Halbert Construction
                                         Company, Inc.
14                                       Email:  jthornton@ftblaw.com
                                                 pmcmanus@ftblaw.com
15

16

17

18

19

20

21

22

23

24

25

26

27   2146.006/3CD2300.jld

28

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

11

# Exhibit 1

 

**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203     El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0061348

## SUBCONTRACTOR AGREEMENT

| Project No: | W91238-13-C-0012 |
|---|---|
| Contract Name: | Monterey Dining Facility |
| HCCI Project No.: | P-785 |
| Cost Code: | 15-060 |

This Subcontract Agreement (this "Subcontract") is made and entered into at San Diego, CA, effective as of *Monday, January 27, 2014* by and between **Halbert Construction Co., Inc.**, 330 South Magnolia Ave. Ste. 203, El Cajon, CA 92020 (hereinafter called the "Contractor") and **McCullough Plumbing, Inc.** (hereinafter called the "Subcontractor") or as more particularly identified as:

Subcontractor:          McCullough Plumbing, Inc.
Point of Contact:     Robert McCullough
Address:                    2321 Auto Park Way Escondido, CA 92029
Telephone No:         760-745-0975
Fax No:                      760-745-1048

Contractor's License:    NO. 559526          Copy Attached: ✓

City License:                 NO.                      Copy Attached: _____

Insurance Policy:         NO. CBP1086122    Copy Attached: ✓

Contracting Office:      US Army Corps of Engineers - Sacramento

Project Owner:           US Army Corps of Engineers

Project Address:         Bldg 629-Presidio of Monterey
                                    West Rifle Range Road and Caffrey Court
                                    Monterey, CA 93944

**Exhibits Attached**
Exhibit A:  Insurance Requirements                        Yes
Exhibit B:  Certified Payroll  (CD)                           Yes
Exhibit C:  HCCI Billing Forms (CD)                        Yes
Exhibit D:  Schedule                                               Yes
Exhibit E:  LEED Product Data Submittal Form        Yes
Exhibit F:  Supplier and Sub-Tier Reporting Form    Yes
Exhibit G:  Exclusions and Clarifications               YES
          *Exhibit G on Halbert Letterhead* ✓

- 1 -

Subcontractor ( Initials)                                          Halbert (Initials)
Mc Cullough Plumbing                    Contract # 785-013

Version 100L.11.25.2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203      El Cajon, CA  92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0061348

Contractor and Subcontractor, for good and valuable consideration, agree as set forth below:

A.    **CONTRACT DOCUMENTS:** The Subcontract includes and incorporates by reference the Terms and Conditions attached hereto which include and incorporate by reference the Project Plans/Drawings, Project Specifications and Scope of Work included in Project No. W91238-13-C-0012, (hereinafter "Contract Documents") including those documents listed below:

Contract Documents are as follows:
- Request for Proposal/Solicitation W91238-13-C-0012      5/30/2013
-  -Amendment 1      6/11/2013
    -Amendment 2      6/20/2013
    -Amendment 3      6/25/2013
    -Amendment 4      6/26/2013
- -FY11 Barracks Complex Phase 1 (1300 PP Dining Facility)      4/2013
    -FY11 Barracks Complex Phase 1 (General Administration Building)      4/30/2013

### Drawing Index:

|  | Dining Facility |  |
|---|---|---|
| Sheet No. | Description |  |
| G-001 - G-004 | General Plan Sheets | *Tuesday, June 25, 2013* |
| B-001 | Geotechincal Plans | Tuesday, April 30, 2013 |
| V-001 - V-104 | Topographical Plans | Tuesday, April 30, 2013 |
| C-001 - C-552 | Civil Plans | Tuesday, April 30, 2013 |
| L-110 - L-903 | Landscape Plans | Tuesday, April 30, 2013 |
| S-001 - S-902 | Structural Plans | Tuesday, April 30, 2013 |
| LS-101 | Life Safety Plans | Tuesday, April 30, 2013 |
| A-001 - A-630 | Architectural Plans | Tuesday, April 30, 2013 |
| I-101 - I-410 | Interior Design Plans | Tuesday, April 30, 2013 |

Subcontractor ( Initials)
Mc Cullough Plumbing

- 2 -

Halbert (Initials)

Contract # 785-013

Version 1000.11.25.2010



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203   El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

| Q-001 - Q-605 | Equipment Plans and Schedule | Tuesday, April 30, 2013 |
| F-001 - F-501 | Fire Protection Plans | Tuesday, April 30, 2013 |
| FA-101 - FA-601 | Fire Alarm Plans | Tuesday, April 30, 2013 |
| P-001 - P-602 | Plumbing Plans | Tuesday, April 30, 2013 |
| M-001 - M-822 | Mechanical Plans | Tuesday, April 30, 2013 |
| E-001 - E-604 | Electrical Plans | Tuesday, April 30, 2013 |
| T-101 - T-602 | Telecommunication Plans | Tuesday, April 30, 2013 |

| General Administration Building | | |
|---|---|---|
| **Sheet No.** | **Description** | |
| G-001 - G-101 | General Plan Sheets | *Tuesday, April 30, 2013* |
| Dining Facility | Exploration Plans | |
| Dining Facility | Survey Plans | |
| Dining Facility | Civil Plans | |
| Dining Facility | Landscape Plans | |
| S-001 - S-601 | Structural Plans | Tuesday, April 30, 2013 |
| LS-101 - LS-103 | Life Safety Plans | Tuesday, April 30, 2013 |
| A-001 - A-630 | Architectural Plans | Tuesday, April 30, 2013 |
| I-101 - I103 | Interior Design Plans | Tuesday, April 30, 2013 |
| F-001 - F-501 | Fire Protection Plans | Tuesday, April 30, 2013 |
| P-101 - P-603 | Plumbing Plans | Tuesday, April 30, 2013 |
| M-001 - M-826 | Mechanical Plans | Tuesday, April 30, |

Subcontractor ( Initials)
Mc Cullough Plumbing

Contract # 785-013

Halbert (Initials)

Version 2001.11.15.2012



**HALBERT CONSTRUCTION CO., INC**

330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

| | | 2013 |
|---|---|---|
| E-001 - E-702 | Electrical Plans | Tuesday, April 30, 2013 |
| T-121 - T-502 | Telecommunication Plans | Tuesday, April 30, 2013 |
| ES-121 – ES-502 | Security Plans | Tuesday, April 30, 2013 |
| FA-121 – FA-502 | Fire Alarm Plans | *Tuesday, April 30, 2013* |

B.    **SCOPE OF WORK:** Subcontractor agrees to furnish all labor, services, materials, installation, cartage, hoisting, supplies, insurance, equipment, scaffolding, tools and other facilities of every kind and description required for the prompt and efficient execution of the work described herein and to perform the work necessary or incidental to complete as drawn on plans and indicated in specifications numbered as follows:  THIS CONTRACT DOCUMENT SUPERCEDES ALL PRIOR DOCUMENTS, PROPOSALS AND / OR VERBAL AGREEMENTS

*Specification Divisions*

```
22 00 00 PLUMBING, GENERAL PURPOSE
22 14 43 RAINWATER HARVESTING SYSTEM FOR IRRIGATION
22 14 46 UNDERGROUND STORAGE TANK FOR RAINWATER HARVESTING FOR
         INTERIOR PLUMBING FIXTURES
22 31 00 WATER SOFTENERS, CATION-EXCHANGE (SODIUM CYCLE)
```

Perform all work necessary for Plumbing in accordance with the Government approved plans and specifications listed above, including prevailing wages, taxes, and any other materials, material unloading, equipment, labor and miscellaneous items, as required per ALL the Contract Documents (Plans and Specifications) as they apply to the scope of work, and as required for a complete and operational system acceptable to both Halbert Construction Company and the Owner.  All performance of work includes but is not limited to the following:

1.    Furnish and install Plumbing items listed in the COMPLETE construction drawings and specifications.
2.    *Dining Facility:*
      -Provide and Install complete drain waste, grease waste piping system under slab and interior of building complete to 5 feet outside of building
      -Provide and Install complete domestic hot and cold water piping system from plumbing equipment fixtures to 5 feet outside of building
      -Provide and Install cistern piping including valves and connection to cistern equipment inside building to 5 feet out
      -Provide and Install gas piping with meter and connections to water heater and boiler. Stub out 5 feet of building
      -Provide and Install water meters, gas meters, backflow preventers and regulators on domestic water

Subcontractor ( Initials)

Mc Cullough Plumbing

- 4 -

Contract # 785-013

Halbert (Initials)

Version 3000.11.25.2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

and gas system
-Provide and install plumbing equipment and fixtures
-Provide and install new gas-fired domestic water heater
-Provide and install rough-in and final connection to kitchen equipment
*Insurance Performance Bond (Bond Certificate for Contract Amount)Included*
**All work is to be done per plans and specifications**

*Administration Building (Option):*
*-Provide and install complete drain waste, grease waste piping system under slab and interior of building complete to 5 feet outside of building*
*-Provide and install complete domestic hot and cold water piping system from plumbing equipment fixtures to 5 feet outside of building*
*-Provide and install cistern piping including valves and connection to cistern equipment inside building to 5 feet out*
*-Provide and install gas piping with meter and connections to water heater and boiler. Stub out 5 feet of building*
*-Provide and install water meters, gas meters, backflow preventers and regulators on domestic water and gas system* – inside building as shown on Plumbing Plans. /MPI/  /VJ/  MPI  Halbert
*-Provide and install plumbing equipment and fixtures*
*-Provide and install new gas-fired domestic water heater*
*-Provide and install elevator sump pump control and piping to approved receptor. Stub out piping 5 feet of building*
*-Provide and install condensate drain lines from HVAC equipment to approved receptors*
*Insurance Performance Bond (Bond Certificate for Contract Amount)Included*
**All work is to be done per plans and specifications**

*Administration Building (3rd Floor Option):* See Administration Building (Option) for Scope
*Insurance Performance Bond (Bond Certificate for Contract Amount)Included*
**All work is to be done per plans and specifications**

3. All Materials furnished will meet the "Buy American Act" standard
4. All subcontractors are required to provide a copy of their certificate of liability insurance, auto insurance, and workers comp. <u>PRIOR TO WORKING ON-SITE</u>. You are responsible to keep an updated file, when you renew these policies, make sure this is sent to the superintendent for required onsite record. Send the original insurance forms to the main office in El Cajon and email Sarah Bunney, sbunney@halbertco.com, copies.
5. Certified payrolls are required to be turned in to Halbert Construction Company's main office weekly, Certified Payroll reports are to be submitted per Exhibit B and on the form WHD347. Halbert Construction Company Inc. will not approve payments to subcontractor without accurate certified payroll documentation.
6. Subcontractor Daily Reports are to be completed after each shift. Man hours and classifications on the daily reports MUST match submitted certified payroll or they will be REJECTED. No exceptions!
7. All Submittals, Shop Drawings, AHA's and company safety plans are to be turned in by *Friday, February 21, 2014.*

Subcontractor ( Initials)
Mc Cullough Plumbing

- 5 -

Halbert (Initials)

Contract # 785-013

Version 1C01.11.25.2213



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

8. Each item submitted must be identified in an itemized list with spec section, paragraph number, drawing number and location.

9. All samples must have the same information included on the back of them including your company name.

10. Comply with all special LEED requirements of this project as specified per specifications, exhibit E "LEED Product Data Submittal Form" and US Army Corps of Engineers standards pertaining to your scope of work. Work includes environmental, sustainable, and "green" building practice requirements related to energy conservation and efficiency, indoor air quality, and resource efficiency. It is the goal of this project, as much as is feasible and practical, to construct a "green" building that meets the US Green Building Council's LEED™ Green Building Rating System Version as follows: LEED 2009.

11. RFIs; Review plans and specs immediately and submit any questions or concerns with an RFI; these are to be submitted via email in word or excel documents.

12. ALL personnel working on this site must obtain a site access badge.

13. All Traffic Control plans, AHA's, and Safety plans including fall protection plans are the responsibility of the subcontractor and will conform to all the contract documents and the EM385 as it applies to the subcontractors scope of work.

14. The US Army Corps of Engineers safety team will follow and enforce OSHA and CAL-OHSA regulations, Assure your foreman & crews are current with their knowledge of safety standards, you are responsible for your personnel and any delays caused due to their lack of safety knowledge.

15. Every person working on-site must have a valid OSHA 10 hour safety card as a minimum; site foreman are required to have an OSHA 30 safety certificate. Contractor must have hard copies for record on site BEFORE subcontract may start work. Safety is paramount with Halbert Construction Co., Inc. (HCCI) and on all federal projects.

16. Subcontractor is responsible for providing proper personal protective equipment (PPE) for any and all of its employees and affiliates performing work on the project work site, including but not limited to, hard hats, steel toe boots, safety glasses/eye/face protection, long pants, shirts with sleeves, fall protection (if necessary), reflective safety vests as required and in compliance with the EM-385 and Governing OSHA specifications. Protective footwear shall meet ASTM F2412 and F2413 standards, add-on devices such as strap-on foot, toe or metatarsal guards shall not be used as a substitute for protective footwear.

17. A daily work plan is required from each subcontractor prior to start of work each day listing your planned schedule of activities for that day.

18. Activity hazard analysis is required prior to start of work daily; this will be part of your daily report - required everyday worked.

19. Coordination between trades - there will be mandatory coordination meetings weekly, and daily as needed. These meetings will be coordinating prior to commencement of work.

20. If a hot work permit will be needed contact the Quality Control Manager (QCM) the day before to insure he/she can get this for your trade, let the QCM know what is will be needed for.

21. Red line drawings are to be updated daily, and or immediately as work involved is completed.

22. All trades are responsible for making sure they clean up the jobsite prior to leaving each day. A clean jobsite is a safe one.  Subcontractor is responsible for cleanup and removal of their trash and excess material on a daily basis.  If HCCI's workers clean up subcontractors trash or have to move subcontractor's material for other operations, subcontractor whose trash/material it was will be charged $200/hr per laborer.  Minimum charge of 2 hours will apply.

23. Subcontractor to submit shop drawings and submittals as separate packages for the Dining Facility

Subcontractor ( Initials)
Mc Cullough Plumbing

Contract # 785-013

Halbert (Initials)

Version 1001.13.25.2013



**HALBERT CONSTRUCTION CO., INC**

330 South Magnolia Ave, Ste. 203     El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

and Administrative Building. At no time shall the subcontractor procure material without written notice of an approved submittal. Any material procured without such an approval will be done so at the expense of the subcontractor.

**C.**     SUBCONTRACT AMOUNT (*Base Bid – Dining Facility*):   Contractor agrees to pay Subcontractor for the strict performance of this work, the sum of: ***Seven Hundred Thirty-Five Thousand, Eight Hundred Dollars ($735,800.00)*** subject to additions and deductions for changes in the work as may be agreed upon, and to make payment in accordance with the payment Schedule, Section 4.

**C.1**     SUBCONTRACT AMOUNT (*Administrative Building Option*):   Contractor agrees to pay Subcontractor for the strict performance of this work, the sum of: ***Three Hundred Twenty-Eight Thousand, Five Hundred Seventy-Five Dollars ($328,575.00)*** subject to additions and deductions for changes in the work as may be agreed upon, and to make payment in accordance with the payment Schedule, Section 4.

**C.2**     SUBCONTRACT AMOUNT (*Administrative Building 3rd Floor Option*):   Contractor agrees to pay Subcontractor for the strict performance of this work, the sum of: ***Fifteen Thousand Dollars ($15,000.00)*** subject to additions and deductions for changes in the work as may be agreed upon, and to make payment in accordance with the payment Schedule, Section 4.

**D.**     PAYMENTS: Application for payments shall be submitted on Contractor's required billing forms by the last day of each month.  **Period-ending date should be the 25th of the month.**  Payments will be based on the percentage of completion at time of application and as acceptable to Contractor, Architect, and Owner, see Section 4.1. Each request for payment will be supplied with appropriate documentation and backup to properly evaluate Subcontractor's payment request. See Article 4, for further details on payment.

**E.**     RETAINAGE: Unless otherwise agreed, the Contractor will withhold (10%) of Subcontractor's approved billing to be held as retention until the Owner, Architect, and Contractor accept the work. Retention shall not be paid by Contractor until he receives final payment from Owner, but not less than thirty-five days after the entire work required by the prime contract has been fully completed in conformity with the Contract Documents and has been delivered and accepted by Owner, Architect, and Contractor.  After aforementioned conditions have been satisfied, the retained percentage shall be paid to Subcontractor promptly after Contractor receives his final payment from Owner.

**F.**     SUBMITTALS: All shop drawings, product data, etc. must indicate model numbers in conjunction with manufacture catalogues in sufficient detail for the final approval by the Contractor and the Owner during the construction phase of the Subcontract. It is the responsibility of the subcontractor to provide a stamped and signed approval of the submittal for their discipline that is in complete compliance with the specifications and drawings.  Furthermore, no time extension will be granted due to late, incomplete, or rejected submittals.  Any review costs for rejected submittals will be borne by the subcontractor.  Submittals must be provided within 7 days upon receiving notice to provide.

**G.**     EXHIBITS: The exhibits attached (Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F) are incorporated herein.   AND Exhibit G *on Halbert Letterhead* VM

_____
Subcontractor ( Initials)
Mc Cullough Plumbing

- 7 -

Contract # 785-013

_____
Halbert (Initials)

Version 1001.11.23.2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
*Ph (619) 593-3527 Fax (619) 447-4192*

*California License #: 521605*
*Nevada License #: 0051348*

H.   **SUBCONTRACT TIME PERIOD:** The Subcontractor shall complete all the Work included under this Subcontract within: Dining Facility-*63* & Administration Building-*forthcoming* calendar days to be determined by project the schedule, Exhibit D, with all work set forth in the scope of work being completed by no later than the Scheduled completion date established for each activity in exhibit D. All work to be completed no later than Dining Facility-*Wednesday, January 14, 2015* & Administration Building-*forthcoming*. Periodically throughout the project the schedule will be updated.

Upon receipt of Letter of Intent, the Subcontractor is responsible for requesting monthly updates and weekly 3 week look ahead schedules. Updates must be acknowledged by the Subcontractor and shall be incorporated into this Subcontract. Any delay to the critical path of construction caused by the Subcontractor shall be subject to liquidated damages. If the Contractor feels the Subcontractor is either currently or anticipated to fall behind set schedules, the Subcontractor shall provide additional manpower or other corrective action as necessary to remedy the delay.

1. **GENERAL PROVISIONS:**

    1.1    **Subcontract Documents.** The Subcontract Documents include: (1) this Subcontract; (2) any attached exhibits; (3) the drawings and specifications, including all addenda issued prior to and all modifications issued after execution of the Subcontract; (4) the project schedule; (5) all change authorizations or modifications to this Subcontract issued by Contractor; (6) other documents listed herein or in the Contract Documents. These form the Subcontract Documents and are as fully a part of this Subcontract as if attached or repeated herein. Contractor and Subcontractor are hereby strictly bound to each other by the terms and requirements of the Subcontract. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract Documents, to the extent of the work provided for in this Agreement, and that where, in the Contract Documents reference is made to Contractor and the work or specification therein pertains to Subcontractor's trade, craft, or type of work then such work or specification shall be interpreted to apply to Subcontractor instead of Contractor.  This Subcontract shall not be construed to create a contractual relationship of any kind between any persons or entities other than the Contractor and Subcontractor.

    1.2    **Scope of Work.** The work to be performed by the Subcontractor includes that work specifically set forth in this Subcontract, as well as any and all other work incidental or related thereto. This shall include but is not limited to that work reasonably necessary for a complete and proper Project or which is necessary to have a properly working and totally acceptable system. All work covered by this Subcontract shall be performed in a skillful and workmanlike manner with material, equipment, etc. being both new and of the best kind and grade for the purpose intended. It being the express intent of the parties hereto that all work usually performed by the trades covered by this Subcontract and required by the Contract Documents shall be performed by the Subcontractor, in addition to that work specifically set forth herein. The Subcontractor shall provide, at its own expense, all temporary and permanent tools, scaffolding, hoisting, elevator service, implements, storage space, shop and working drawings, test, samples, models,

---

Subcontractor ( Initials)                                    - 8 -                         Halbert (Initials)

Mc Cullough Plumbing                          Contract # 785-013                    Version 1001.11.25.2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

guarantees and warrantees, permits, licenses, unloading and trash removal at project sites, sales tax and all other applicable taxes, and all other items necessary for the proper performance and acceptance of the work covered in this Subcontract. The Subcontractor shall pay for any required inspection fees, royalties, and license fees for Subcontractor's work.

1.3 **Clean-up.** During the course of construction, Subcontractor shall remove waste materials from the site recurrently as is necessary to maintain the premises in a clean and orderly condition. Upon completion of the work under this Agreement, Subcontractor shall remove from the site all temporary structures, debris and waste incident to his operation and clean all surfaces, fixtures, equipment, etc., relative to the performance of this Agreement. If Subcontractor fails to perform a clean-up function within two days after notification from Contractor to do so, Contractor may proceed with that function as he judges necessary and in the manner he may deem expedient, and the cost thereof shall be charged to Subcontractor and deducted from the moneys due under this Agreement.

2. **PERFORMANCE OF WORK:**

2.1. **Commencement of Work.** Work will commence when the Contractor issues the Subcontractor a Notice to Proceed (NTP) specifying the start date of the project. By signing this Subcontract or commencing work, Subcontractor represents that it has visited and inspected the nature, locality and site of the work and the conditions and difficulties under which the work is to be performed. Subcontractor enters into this Subcontract on the basis of the Subcontractor's own examination, investigation and evaluation of all such matters and not in reliance upon any opinions or representations of Contractor, or of any of Contractor's respective officers, agents, or employees. Subcontractor further represents that it has carefully reviewed and understands the Subcontract Documents and is thus aware of any impact, relationship, or interference which the site, site conditions, climate, construction sequence, Subcontract Documents, and/or the work of other subcontractor or contractors will have upon Subcontractor's access, operations, efficiency, etc. Subcontractor further represents that it has reviewed and agrees to the schedule of Contractor.

A Notice to Proceed (NTP) will not be issued and therefor NO WORK MAY PROCEED until Contractor has received from Subcontractor the following materials: (1) a letter from the Subcontractor stating who in Subcontractor's organization has authority to obligate Subcontractor in ALL matters, (2) this Subcontract Agreement initiated by Subcontractor and Contractor, (3) all appropriate Insurance Certificates including proof of Worker's Compensation, Liability, and Automobile Insurances, as required, (4) a copy of Subcontractor's contractor license and city business license, (5) Subcontractor's tax ID number, (6) copy of Halbert Construction Co., Inc's Safety Policy signed by Subcontractor acknowledging acceptance, (7) a completed and acceptable Schedule of Values for the Subcontractor's scope of work, (8) a list of ALL subcontractors/suppliers that Subcontractor proposes to utilize during Subcontractor's performance of the work, (9) a copy of Subcontractor's Safety Plan, (10) a MSDS Sheet for ALL Hazardous Materials

Subcontractor ( Initials)
Mc Cullough Plumbing

- 9 -

Contract # 785-013

Halbert (Initials)

Version 2006.11.23.2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203 · El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

to be brought on site, (11) a letter from the Subcontractor assigning one person from Subcontractor's organization responsible as "point of contact" to which all information, including RFI responses, special instructions, and general correspondence will be sent, and (12) a list of all Subcontractor employees associated with this project including office, fax, and cell phone numbers.

2.2     **Timely Performance.** Time is of the essence of this Subcontract. Subcontractor therefore agrees: (1) to procure and prepare Subcontractor's materials so as to be ready to begin work when directed by Contractor, (2) to plan, prosecute, and complete Subcontractor's work in a prompt and diligent manner so as not to delay, disrupt, hinder or interfere with the work of Contractor or other subcontractor's, (3) to commence the several parts thereof at such times and proceed therewith in such order as may be directed by Contractor, (4) to provide, at Subcontractor's expense, additional workers and/or to work on an overtime or shift basis should Contractor reasonably so direct to meet project schedule, (5) to do all layout, cutting, fitting, sealing and patching of Subcontractor's work as may be required to make Subcontractor's several parts come together properly and to fit them to receive or be received by the work of Contractor or other subcontractors, all as shown upon or reasonably implied by the Subcontract Documents, (6) to proceed in a skillful and expeditious manner, with sufficient labor, materials, tools, equipment, and supplies, (7) to complete the several parts and the whole of said work as provided herein so that, in conjunction with other subcontractors engaged thereon, Subcontractor will ensure the uninterrupted progress of the project and enable Contractor to complete the project as scheduled by Contractor.

2.2.1   Time is of the essence of this Subcontract. It shall be Subcontractor's obligation to conform to Contractor's progress schedule, subject to Contractor's modification, which is incorporated herein by this reference and made a part hereof. Subcontractor shall prepare and obtain approval as required by the Contract Documents for all shop drawings, details, samples and do all other things necessary and incidental to the prosecution of his work in conformance with the said progress schedule. He shall coordinate the work covered by this Agreement with that of all other contractors, subcontractors, and of the Contractor in a manner that will facilitate the efficient completion of the entire work. Contractor shall have complete control of the premises on which the work is to be performed and shall have the right to decide the time or order in which the various portions of the work shall be installed or the priority of the work of other subcontractors, and, in general, all matters representing the timely and orderly conduct of the work of Subcontractor on the premises.

2.2.2   Should Subcontractor be delayed in the prosecution or completion of the work by the act, neglect or default of Owner, or Architect, or of Contractor, or should Subcontractor be delayed waiting for materials, if required by this Contract to be furnished by Owner or Contractor, or by damage caused by fire or other casualty for which Subcontractor is not responsible, or by the combined action of the workmen, in no wise caused by, or resulting from default or collusion on the part of Subcontractor, or in the event of a lockout by Contractor, then the time herein fixed for the completion of the work shall be extended the number of days that Subcontractor has thus been delayed, but no

Subcontractor ( Initials)
Mc Cullough Plumbing

- 10 -

Halbert (Initials)

Contract # 785-013

Version 1009.11.25.2015



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203     El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

allowance or extension shall be made unless a claim therefore is presented in writing to the Contractor within 48 hours of the commencement of such delay, and under no circumstances shall the time of completion be extended to a date which will prevent Contractor from completing the entire project within the time that Owner allows Contractor for such completion.

2.2.3   No claims for additional compensation or damages for delays, whether in the furnishing of material by Contractor, or delays by other subcontractors or Owner, will be allowed by the Contractor, and said extension of time for the completion shall be the sole remedy of Subcontractor; provided, however, that in the event, and in such event only, that Contractor obtains additional compensation from Owner on account of such delays, Subcontractor shall be entitled to such portion of the additional compensation so received by Contractor from Owner as is equitable under all of the circumstances. Nothing herein contained shall require Contractor to make any claim against Owner for such delays, and it specifically agreed that the failure of Contractor to prosecute any such claim against Owner shall not entitle Subcontractor to any claim for damages against Contractor.

2.3     **Schedules.** For purposes of scheduling the work, Contractor may periodically develop and modify project schedule(s). The Subcontractor agrees to furnish all scheduling information broken down in work activities with each activity cost loaded as required by Section 01321 of the Technical Specification, if applicable, for the Contractor to prepare project schedule(s). The float on the project schedules belongs to Contractor for use in scheduling the work. Contractor retains the right to modify, suspend, delay or accelerate, in whole or in part, said schedule(s), change work sequences and priorities, and to otherwise schedule the work so as to achieve timely project completion. So long as such modifications, changes in sequence, etc., are not arbitrary and capricious, Subcontractor agrees to adapt its efforts and to meet Contractor's schedule(s).

2.4     **No Damage for Delay.** Should Subcontractor's performance be delayed, hindered, interfered with, or otherwise disrupted by any act of the Contractor, other subcontractor(s) or supplier, whether avoidable or unavoidable, reasonable or unreasonable, or foreseeable or unforeseeable, Subcontractor's sole and exclusive remedy shall be an equitable time extension for the performance of the work. This exclusive remedy shall apply only if Subcontractor properly notifies the Contractor, in writing, of the cause of delay within seven (7) days of the occurrence of the event, and provided a similar extension of time is allotted to the Contractor by the Owner under the Contract Documents. Subcontractor shall not be entitled to and hereby expressly waives any claim for any increase in the subcontract price or for additional damages or compensation as a consequence of such delays, unless such delays are payable for under the terms and conditions of the Contract Documents.

2.5     **Failure to Perform the Work.** If Subcontractor shall at any time: (1) refuse or neglect to apply a sufficient number of properly skilled workers or sufficient materials of the proper quality, (2) fail in any respect to prosecute the work promptly, (3) fail to promptly remove and replace work condemned or rejected by the Contractor,  (4) cause

Subcontractor ( Initials)
Mc Cullough Plumbing

- 11 -

Contract # 785-013

Halbert (Initials)

Version 1001.11.25.2013



**HALBERT CONSTRUCTION CO., INC**

330 South Magnolia Ave, Ste. 203    El Cajon, CA  92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

by any action or omission the stoppage of, delay of, or interference with the work of Contractor or of any other subcontractor, (5) fail in the performance of any of the material covenants herein contained, (6) be adjudged bankrupt or make a general assignment for the benefit of creditors, or (7) become insolvent or a debtor in reorganization, receivership, composition or arrangement proceedings; then twenty-four (24) hours after delivery of a notice to Subcontractor indicating the existence of any of the foregoing causes, Contractor at Contractor's option may provide, either by itself or through others, labor and materials to prosecute and complete the work and shall deduct the cost thereof from any amounts then due or thereafter to become due to Subcontractor.

In any such event, after written notice and Subcontractor's failure to eliminate such cause within the twenty-four (24) hours specified, Contractor may at its option (and without prejudice to any other remedy) terminate all or part of this Subcontract "for cause". For the purpose of completing the work, the Contractor may take possession of all or part of the materials and equipment of Subcontractor at the project site, all of which Subcontractor hereby assigns to Contractor. Contractor may then complete the work by whatever reasonable method Contractor deems expedient. In case of such partial or total termination, the Subcontractor shall not be entitled to receive any further payment until the work required by this Subcontract is fully complete and accepted under the terms and conditions of the Contract Documents, or Contractor.

At such time of acceptance, if the cost Contractor incurs to complete the work is less than the unpaid balance of the Subcontract Amount set forth in Section C above, Contractor shall pay such excess to Subcontractor. If Contractor's Cost exceeds the unpaid balance, Subcontractor shall promptly pay the difference to Contractor. "Cost", as used in this Paragraph, shall include: (1) Contractor's expenses incurred in taking over and completing Subcontractor work, (2) damages incurred by Contractor due to Subcontractor's non-performance etc., and (3) an additional 20% of the Costs for Contractor's overhead and profit.

2.6    **Damages.** If Subcontractor fails to prosecute the work as required in this Subcontract, Subcontractor and its surety shall be liable for: (1) liquidated damages, as defined in section 2.7, and (2) any and all legal and equitable remedies for injuries suffered by Contractor and its subcontractors and suppliers as a result of or contributed to by delay caused by Subcontractor's (or any other person or entity for whose acts Subcontractor may be liable) non-performance. Subcontractor's responsibility for such damages shall exist regardless of whether Contractor elects to take over Subcontractor's work. Contractor and Subcontractor shall not be liable to one another for any delays arising out of acts of God.

2.7    **Liquidated Damages.** The following liquidated damage amount has been established by the Owner for failure to complete the work within the time stipulated herein.  In no way shall costs for liquidated damages be construed as a penalty on the Subcontractor. Should the Subcontractor fail to substantially complete  the work under this Subcontract, thereby delaying occupancy of the buildings on or before the date

Subcontractor ( Initials)
Mc Cullough Plumbing

- 12 -

Contract # 785-013

Halbert (Initials)

Version 3006.11.25.2013



**HALBERT CONSTRUCTION CO., INC**

330 South Magnolia Ave, Ste. 203     El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

stipulated for substantial completion or such later date as may result from extension of time granted under the Contract Documents, he shall pay the Contractor as liquidated damages the following:

2.7.1   The Subcontractor shall pay to the Contractor, as liquidated damages, the sum of $4,500 per day for each consecutive calendar day that the terms of this Subcontract remain unfulfilled past the date of substantial completion.

2.7.2   For each consecutive day that the work remains uncompleted after the date established for final completion, the Subcontractor shall pay the Contractor the sum of $4,500 per calendar day. This amount is the minimum measure of damages the Contractor shall sustain by failure of the Subcontractor to complete all remedial work, correct deficient work, clean up the project, and perform other miscellaneous tasks as required to complete all other work specified. The liquidated damages for final completion shall not be assessed concurrently with the assessment of damages to achieve Substantial Completion set forth immediately above.

2.8   **Other Subcontractors.** Contractor shall not be liable to Subcontractor for any damages, losses or expenses resulting from acts or omissions (whether or not negligent), failures to perform, delays in performance, or defaults of a supplier or another subcontractor in connection with the performance of any of the work covered by this Subcontract. Subcontractor agrees that any project supplier or other subcontractor shall have a direct right of action against Subcontractor for damages, loss or expense resulting from Subcontractor's acts or omissions (whether or not negligent), failure to perform, delays in performance, or default.

2.9   **Safety.** At all times while any of Subcontractor's employees, agents, or subcontractors are on the project site, Subcontractor shall be solely responsible for providing them with a safe work place of employment. Subcontractor shall inspect the places where its employees, agents or subcontractors are or may be present on the project site and shall promptly take action to correct conditions, which are or may become an unsafe place of employment for them. Subcontractor, its agents, employees, material, men and subcontractors shall perform their work in a safe manner, including but not limited to:

2.9.1   Complying with all safety regulations, including all OSHA 1910, 1926 standards and EM 385.1.1 safety requirements and all regulations adopted thereunder,

2.9.2   Providing a company letter indicating the name of their competent person(s) for the project that includes a current First Aid/CPR card and a copy of their OSHA 10 or 30 hour training card,

2.9.3   Holding weekly safety meetings and giving the SSHO a copy of the employee sign in sheet to remain on file with the SSHO,

2.9.4   Installing barricades, signs, flags, lights and other safeguards to prevent injury to workers and others on or about the construction site,

Subcontractor ( Initials)
Mc Cullough Plumbing

- 13 -

Halbert (Initials)

Contract # 785-013

Version 1001.11.25.2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA  92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

2.9.5    Providing the SSHO with a copy of the current Material Safety Data Sheets (MSDS) for each chemical or hazardous material the Subcontractor will be using on the project in a three ring binder listing the chemical name, estimated amount to be on site any any time and a 'master list' in alphabetical or numerical order as well as updating the MSDS book when any new chemicals are delivered to the project,

2.9.6    Insuring that hazardous material containers are properly labeled and that Subcontractor's employees have been properly trained,

2.9.7    Ensuring that the workers job attire, at a minimum,  includes long or short sleeve shirts, long pants, leather safety boots, safety glasses and hard hats and such other appropriate safety equipment that is applicable to their job , and

2.9.8    Providing Contractor a copy of Subcontractor's *Site Specific* written safety program. Overall corporate safety manuals or company safety manuals shall not be accepted; site specific safety manuals only.

2.9.9    Subcontractors shall provide for review by SSHO and approval of the GDA a current Activity Hazard Analysis (AHA) of each activity they will be performing before work can be started.

2.9.10  All heavy equipment shall be inspected before use; a copy of the daily equipment inspection sheet shall be given to the SSHO for his files; Only authorized equipment operators shall be allowed to operate the equipment and a copy of their certificate and/or a letter from their company listing the authorized operators will be given to the SSHO for his files.

2.9.11  Additional base requirements maybe required; fall protection form; excavating and trenching permit; forklift lift certification and hot work permitting, please check with the SSHO before starting any work to comply with the above referenced standard.

Subcontractor shall indemnify and hold harmless all parties under this Subcontract, their officers, employees and agents, from any and all claim, loss or liability, including attorney's fees, arising out of Subcontractor's failure to comply with this provision.

Subcontractor is to abide by Contractor's Policy of: No Alcohol; No Drugs; No Weapons of Any Kind; No Smoking; No Radios; No Harassment of Students, Pedestrians, or Others; No Dogs on job-site.  Anyone in violation will be removed from job site and not allowed to return.

2.10    **Fines.** If Subcontractor's alleged acts or omissions result in a fine or penalty levied against Contractor by any lawful regulatory agency or court, then the amount so levied shall be for Subcontractor's account and shall be deducted from amounts otherwise due Subcontractor.

Subcontractor ( Initials)
Mc Cullough Plumbing

- 14 -

Contract # 785-013

Halbert (Initials)

Version 1001.11.25.2011



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203     El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

2.11   **Supervision.** Subcontractor shall provide competent superintendent and necessary assistants who shall be in attendance at the project site. The superintendent shall represent the Subcontractor and all instructions given by Contractor to Subcontractor's superintendent or foreman and documents executed by said superintendent or foreman shall be binding upon Subcontractor. In the event the Contractor determines that the Subcontractor is 14 days or more behind schedule, then the Superintendent shall remain on the project not less than ten hours per day, six days per week until such time as the Contractor determines that the Subcontractor is back on schedule or unless the project is closed down due to conditions beyond the control of the Subcontractor.

2.12   **Acceptance of Work.** All work shall be done, in strict accord with the Subcontract, subject to the final approval of the parties defined herein. The Contractor's decision in matters relating to artistic effect shall be final, and Subcontractor agrees to comply with such decisions.

2.13   **Acceptance of the Work of Others.** Should the proper performance of any work under this Subcontract depend upon the proper performance of any work or material furnished by Contractor or others, Subcontractor agrees to use all reasonable means necessary to discover any defects and report them in writing to Contractor before proceeding with Subcontractor's work. Subcontractor shall allow Contractor a reasonable time in which to remedy such defects. In the event Subcontractor does not so report any defects to Contractor in writing, then it shall be presumed that Subcontractor has fully accepted the work of others as being satisfactory. Subcontractor shall be fully responsible thereafter for satisfactory performance of the work covered by this Subcontract, regardless of the defective work of others. Contractor disclaims responsibility for data, documents, drawings or information of any nature whatsoever provided by Owner or Architect. The accuracy of such information is not warranted, and Subcontractor bears the responsibility of verifying the accuracy of such information provided by the Owner.

2.14   **Incidental Charges.** Unless otherwise noted in this Subcontract, reasonable amounts for unloading, hoisting, clean-up, templates, layout or other services provided by Contractor for Subcontractor, and reasonable amounts for Contractor's equipment, tools, etc., used by Subcontractor shall be deducted from amounts otherwise due Subcontractor. Charges for incidental extra work performed by one party at the request of the other party, or for the benefit of the other party, or in the event of default by the other party shall be charged at direct field cost plus an additional 20% of the field cost as a charge for overhead and profit and shall be executed as a change order.

2.15   ~~Permits,~~ **Fees, and Codes.** Subcontractor shall, at its own cost and expense, pay all fees related to the execution of Subcontractor's work. Subcontractor shall apply for and obtain all necessary ~~permits,~~ licenses, etc., and conform strictly to the presiding State laws, building codes and ordinances in force insofar as applicable to the work covered by this Subcontract.

2.16   **Registered Contractor.** Subcontractor represents and agrees that it is a licensed contractor in fact and within the scope of the laws of the State of California including

<u>Halbert</u>     <u>MPI</u>

- 15 -

<u>Subcontractor ( Initials)</u>
Mc Cullough Plumbing

Contract # 785-013

<u>Halbert (Initials)</u>

Version 1001.11.11.2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203     El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

insurance laws and regulations; applicable safety, health and environmental laws and regulations and is therefore solely responsible for: (1) Subcontractor's compliance with such laws, regulations and agreements, (2) all State, local and Union taxes, and (3) and other deductions, withholdings and contributions payable under such laws, regulations and agreements. The Subcontract Amount includes all applicable sales and use taxes; franchise, excise, and other taxes; and government required Davis Bacon Wage requirements of all kinds and is not subject to any addition for any such taxes or impositions now or hereafter levied.

2.17    **Guarantee/Warranty.** During the guarantee (or warranty) period(s) established in the Subcontract for a period of one (1) year from date of final completion of the total project, Subcontractor agrees to promptly make good, solely at Subcontractor's expense, any work performed by Subcontractor contrary to the Subcontract (including all defects due to defective workmanship and/or materials) and all damage and other losses resulting therefrom. Subcontractor further agrees to provide, in writing, any guarantees, maintenance agreements or other documents related to the work above described required by the Subcontract. Subcontractor's responsibility for latent defects shall extend beyond the guarantee period to the maximum extent as applicable statutes permit.

## 3.   CHANGES IN THE WORK:

3.1    **Changes in the Work.** Subcontractor hereby agrees to make any and all changes, furnish the materials and perform the work that Contractor may require, without nullifying this Agreement, at a reasonable addition to, or reduction from, the Contract Price stated herein, and pro rate to the same, Subcontractor shall adhere strictly to the plans and specifications unless a change therefrom is authorized in writing . Under no conditions shall Subcontractor make any changes, either as additions or deductions, without the written order of the Contractor and Contractor shall not pay any extra charges made by the Subcontractor that have not been agreed upon in writing by Contractor; and, in no event shall Contractor make payment for any such extra charges unless and until the Contractor itself receives payment from Owner. Subcontractor shall submit immediately to the Contractor written copies of his firm's cost or credit proposal for changes in the work, including breakdowns, invoices, or other backup documentation. Disputed work shall be performed as ordered in writing by the Contractor and the proper cost or credit breakdowns therefore shall be submitted without delay by Subcontractor to Contractor.

3.2    **Change/Field Orders.** Contractor may add to or deduct from the work required by this Subcontract and any changes so made shall be defined only by Contractor's written Change Order or written Field Order. A Change Order is written order executed before the performance of the work and sets forth the changes involved and the value and time impact thereof, which value and time impact must be mutually agreed upon between Contractor and Subcontractor. A Field Order is a written order from Contractor's PROJECT MANAGER ONLY to Subcontractor directing a change to the work setting forth



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0061348

a proposed basis for adjusting the Subcontract price and time (if any). A Field Order may be used in the absence of total agreement on the terms of a Change Order. A Field Order will be replaced by a Change Order after the price and time impacts have been agreed to. HALBERT FIELD EMPLOYEES CANNOT APPROVE FIELD CHANGE ORDERS, ONLY HALBERT PROJECT MANAGERS. Any signatures from Halbert field employees for field change orders will not be honored and are at the expense of the subcontractor if he/she fails to obtain authorization for said changed work from Halbert's Project Manager prior to the start of said work. If mutual agreement is not possible, then the price and time impact shall be determined as provided in Article 7 of this Subcontract.

In either event, Subcontractor agrees to proceed with the work as changed pending determination of the value of the change when so ordered in writing by Contractor so as not to delay the progress of the work. No claim for additional compensation, whether on account of extra labor and/or materials furnished, changed conditions, or otherwise, shall be paid unless the same is furnished pursuant to a written Change Order or Field Order signed by Contractor. Subcontractor shall provide Contractor with detailed pricing and time extension information for a proposed change in the work within seven (7) calendar days of receipt of information regarding said proposed change. Subcontractor will provide the Contractor the following detail on all proposals for changes to the Subcontract: Cost and complete description of material; Total labor cost, showing hours to be worked, hourly rate to be paid to employee and labor burden percentage and cost; Profit and overhead mark-up and any other information or documentation required by the Contract Documents. Subcontractor shall limit the profit and overhead mark-up to a combined total 10% of the actual costs incurred by the Subcontractor or the subcontractors & materialmen of the Subcontractor. Subcontractor shall provide Contractor with detailed pricing and time extension information for alleged changed conditions within seven (7) days of encountering alleged changed conditions. Subcontractor shall not be entitled to compensation or time extension for claimed changed conditions unless a written claim for the same is received by Contractor within seven (7) days of such event.

Subcontractor shall review each Change Order or request for Change Order or directive issued under the terms and conditions of this Subcontract, and advise Contractor, in writing, within seven (7) days of receipt, as to the impact, if any, on Subcontractor's work, including any adjustment in Subcontract time or price. Subcontractor shall proceed with the work as directed by Contractor while such claim for adjustment is being determined by this Subcontract.

Change Order Signature Authority will only be recognized from the following Halbert Construction personnel:

-Travis Raymer

-Kenny Steidl

-Michael P. Halbert Jr.

4.   PAYMENTS

Subcontractor (Initials)
Mc Cullough Plumbing

- 17 -

Contract # 785-013

Halbert (Initials)

Version 1001.12.25.2013



**HALBERT CONSTRUCTION CO., INC**

330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

4.1 **Billings/Payments.** Contractor shall make, on account of the Subcontract price (adjusted by Change Orders, if any), periodic payments to Subcontractor, for work that is satisfactorily performed in the preceding pay period and as approved by the Contractor, Architect and Owner. Applications for progress payments shall be submitted in writing by the end of each month for work completed through the 25th and must contain the following documentation: an application for payment on Halbert Construction Company's required billing form (which will be emailed to you) updated for every billing cycle, an updated subcontractor/supplier declaration form, conditional or unconditional lien releases for subcontractors/suppliers dated through the date of the application submitted to the Contractor (**pay applications and releases must be through the 25th**), and a conditional release by Subcontractor for the amount of the application for payment. Payments will not be made to the Subcontractor until the schedule of values has been submitted to and accepted by the Contractor, Architect, and Owner, and payment has been received by Contractor from the project owner.

4.2 **Prompt Payment for Subcontractors.** Contractor will release payment to the Subcontractor for satisfactory performance under this Subcontract PROVIDED ALL OF THE TERMS OF SECTIONS 4.1 AND 4.5 OF THE CONTRACT HAVE BEEN MET INCLUDING SUBCONTRACTOR PROVIDING CERTIFIED PAYROLL AS REQUIRED (See Contract Exhibit B) and monthly updated sub-tier subcontractor and material supplier reporting form (Exhibit E), no later than seven (7) days from receipt of payment out of such amounts as are paid to the Contractor under this Subcontract. In the event that the Contractor fails to pay the Subcontractor within 7 days of receiving funds from the Owner, Subcontractor is entitled to interest for the period beginning on the day after the required payment date and ending on the date on which payment is made.

4.3 **Subcontractor Clause Flowdown.** Subcontractor is required to include a payment clause and interest penalty clause conforming to the standards set forth in section 4.2, and require each of its subcontractors to include such clauses in their subcontractor with each lower tier subcontractor and supplier.

4.4 **Payments by Subcontractor.** Subcontractor shall pay for materials, equipment, and labor used in connection with performance of this Subcontract through the period covered by previous payments received from Contractor, and shall furnish satisfactory evidence, and lien releases as requested, to verify compliance with these requirements.

4.5 **Payments Withheld.** Payments otherwise due Subcontractor, including payment of retainage and final payment, may be withheld by Contractor without incurring penalty if Subcontractor: (1) fails to provide surety bonds, if required, (2) fails to provide or maintain acceptable and current insurance, (3) fails to provide an acceptable cost breakdown, (4) fails to remedy defective work, (5) fails to make payments owing to its employees, suppliers or subcontractors for material, services or labor, monthly updated sub-tier subcontractor and material supplier reporting form (Exhibit E) (6) fails to perform per schedule or commitment made by Subcontractor according to this Subcontract, (7) fails to perform per Contractor's schedule, (8) fails to provide

Subcontractor ( Initials)
Mc Cullough Plumbing

- 18 -

Contract # 785-013

Halbert (Initials)

Version 1001.11.15.2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

required documentation for Subcontractor's invoicing including Company Invoice, AIA G702 and G703 Application for Payment and Continuation Sheet, Subcontractor/Supplier Lien Releases through date of application, (9) fails to provide certified payroll, (10) fails to maintain "As Built" Drawings each month, (11) fails to supply or maintain Material Safety Data Sheet (MSDS) Logs on-site per government regulations, or (12) creates a reasonable doubt as to whether Subcontractor can complete the work of this Subcontract for the balance then unpaid.

**4.6    Acceptance.** Payment to Subcontractor for final acceptance shall be approved after the completion and acceptance by the Architect, Owner, and Contractor. Upon receipt of a Request for Final Inspection, the Contractor shall inspect the Subcontractors works and produce a "Punchlist" of defective or incomplete items to be corrected or completed. Should this list contain only minor items the Contractor shall issue approval for payment on the condition that all "Punchlist" items are rectified within the period of 30 calendar days. Should "Punchlist" items not be corrected within the specified period then the Contractor shall withhold any future payment applications, until such time as the "Punchlist" items are confirmed as completed by the Contractor.

**4.7    Final Payment and Retainage.** The retained portion of Subcontractor's approved billings, and any other portion of the Subcontract Amount which is unpaid at the time of project completion shall be retained by Contractor, and shall not be paid to Subcontractor until: (1) Contractor receives final project retainage payment under the terms and conditions of the Contract Documents, (2) Acceptance of Subcontractor's work, guarantees, warrantees, etc., (3) Subcontractor furnishes Contractor with satisfactory evidence that all obligations incurred by Subcontractor, pursuant to this Subcontract have been paid in full, including final unconditional lien releases, (4) Subcontractor furnishes all As-built Drawings, O & M Manuals, Warrantees, and Subcontractor's letter of warranty. Unless required by statute, the Subcontractor shall not be entitled to interest on retained funds. Subcontractor must submit an invoice for retainage to receive payment for retainage. Acceptance of final payment by Subcontractor shall constitute a waiver of any and all claims by Subcontractor against all parties of the Contract, including, but not limited to, the Contractor and the Owner.

**5.  INSURANCE AND DUTY TO DEFEND, INDEMNIFY & HOLD HARMLESS:**

**5.1 INSURANCE – SUBCONTRACTOR** shall at all times carry on all operations hereunder Workers' Compensation and Employers Liability Insurance covering all of its employees, General Liability ,   Commercial Automobile Liability and Property Damage Insurance, including liability coverage for  all operations, subcontract work, contractual obligations, product or completed operations, all owned vehicles, non-owned vehicles, and Umbrella or Excess Liability in forms, amounts and underwritten by insurance companies satisfactory to CONTRACTOR.  Before SUBCONTRACTOR performs any work at, or prepares or delivers materials to the site of construction,

SUBCONTRACTOR shall furnish certificates of insurance evidencing the

Subcontractor ( Initials)
Mc Cullough Plumbing

- 19 -

Halbert (Initials)

Contract # 785-013

Version 3002.31.25.2013



**HALBERT CONSTRUCTION CO., INC**

330 South Magnolia Ave, Ste. 203     El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

foregoing insurance coverage's and such certificates shall provide that the insurance is in force and will not be cancelled without ten days written notice to CONTRACTOR. SUBCONTRACTOR shall maintain all of the foregoing insurance coverage's in force until the work under this Agreement is fully completed. The requirement for carrying the foregoing insurance shall not derogate from the provisions for indemnification of CONTRACTOR by SUBCONTRACTOR under indemnity provisions of this Contract.

I.     **Commercial General Liability**

Each Subcontractor shall supply a Certificate of Insurance showing evidence of Commercial General Liability coverage with the following minimum limits:

- $2,000,000 General Aggregate (Per Project)
- $2,000,000 Products/Completed Operations Aggregate
- $1,000,000 Personal Injury Liability
- $1,000,000 Each Occurrence (combined single limit for bodily injury and property damage)

The certificate must have the CG 2010 (11/85) ENDORSEMENT OR its EQUIVELANT attached, naming the following as additional insured: HALBERT CONSTRUCTION CO., INC., owner(s), officials, employees, agents and subcontractors.

The Additional Insured Endorsement must be attached to the certificate and state that this insurance is PRIMARY and NON-CONTRIBUTORY over any other insurance. Contractor insurance shall be excess or secondary, and not contributing with insurance obtained by said subcontractor to fulfill the insurance requirements herein, regardless of any language contained in any or all policies.

Subcontractor shall furnish Contractor with a WAIVER OF SUBROGATION

Endorsements that limit or exclude coverage will need to be attached to the certificate. Subcontractor shall maintain Products/Completed Operations coverage for a period of ten (10) years following the completion of the project.

Defense costs afforded to contractor shall be outside the policy limits.

Coverage shall contain no special limitation on the scope of protection afforded to contractor, owner, or its officials, employees, agents and subcontractors.

Subcontractors performing <u>Grading, Earthwork and/or Underground Utility</u> activities shall <u>NOT</u> have risks relating to SUBSIDENCE excluded from coverage under their general liability and umbrella/excess policies.

Deductibles and Self-insured Retentions in excess of $25,000 must be declared, and approved by Contractor. At the option of Contractor either: the insurer shall reduce or eliminated such deductibles or self-insured retentions as they respect to Contractor.

If Subcontractor employs sub-subcontractors in the performance of its work, Subcontractor agrees to obtain equivalent insurance provisions from its sub-subcontractors as required under this Agreement and provide a copy of their

Subcontractor ( Initials)

Mc Cullough Plumbing                    Contract # 785-013

Halbert (Initials)

Version 1001.11.25.2011



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203      El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

*California License #: 521605*
*Nevada License #: 0051348*

certificate of insurance to Halbert Construction Co., Inc.

II.    **Commercial Automobile Liability**

On an occurrence basis covering all Owned, Non-Owned, and Hired Vehicles for limits of liability of at least $1,000,000. If Subcontractor at any time transports hazardous materials, Subcontractor shall carry $1,000,000 auto pollution coverage including transporters liability.

III.    **Workers Compensation and Employers Liability**

Including Occupational Disease insurance meeting all statutory requirements of the State in which the work is to be performed together with Broad Form All States Endorsement and containing Employers Liability insurance in an amount of at least $1,000,000. Each Subcontractor shall supply a Certificate of Insurance containing the following minimum limits:

- $1,000,000 Each Accident (bodily injury by accident)
- $1,000,000 Disease - Policy Limit (bodily injury by disease)
- $1,000,000 Disease - Each Employee (bodily injury by disease)

**A WAIVER OF SUBROGATION shall** be attached in favor of Halbert Construction Co., Inc.

If Subcontractor or Independent Contractor is exempt from workers compensation, then Contractor shall be notified immediately with a statement as such.

IV.    **Excess/Umbrella**

- Subcontractor shall provide a minimum of $1,000,000 limit.

V.    **Professional Liability**

All Subcontractors performing DESIGN, ENGINEERING, TESTING, SURVEYING, or other PROFESSIONAL SERVICES shall maintain PROFESSIONAL LIABILITY insurance. A Certificate of Insurance shall be supplied showing Professional Liability (Errors and Omissions) coverage with limits not less than $1,000,000 per claim and in the aggregate.

VI.    **Pollution Liability**

If the Subcontractor is providing any environmental remediation or consulting services, a Certificate of Insurance shall be supplied showing Pollution Liability coverage for claims arising from the release or removal of any hazardous materials or pollutants.

VII.    **Property**

All work covered by this agreement done at the site, or in preparing or delivering materials or equipment to the site, shall be at the sole risk of subcontractor until the completed work is accepted by Contractor.

VIII.    **Rating**

_____
Subcontractor ( Initials)
Mc Cullough Plumbing

- 21 -

Contract # 785-013

_____
Halbert (Initials)

*Version 1001.11.15.2013*



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

All insurers shall have a minimum A.M. Best's rating of A VII and be admitted in California.

IX.    **Cancellation Clause**

ACORD 25, Version 2009/01 Certificates should have the words, "endeavor to" and "but failure to mail such notice shall...or representatives" crossed out.  Written notice should be no less than 10-days.

ACORD 25, Version 2009/09 Certificates do not require crossed out wording nor should they include 10-day notice.

X.    **Certificates**

All Certificates must be received by Halbert Construction Co., Inc. prior to the commencement of work.  Subcontractor failure to send Certificate of insurance or maintain the insurance coverage's required pursuant to this Agreement shall be deemed a Subcontractor default. In such event, Halbert Construction Co., Inc. may terminate this Agreement and obtain damages from Subcontractor resulting from said default. Alternatively, Halbert Construction Co., Inc. may purchase such required insurance coverage and without further notice to Subcontractor, Halbert Construction Co., Inc. may deduct from sums due to Subcontractor any premium costs advanced by Halbert Construction Co., Inc. for such insurance.

**5.2    Indemnity.** All work covered by this Agreement done at the site shall be at the risk of Subcontractor alone.  Subcontractor agrees to save, indemnify and keep harmless Contractor against any and all liability, claims, judgments, or demands, including the obligations of Contractor on account of any similar agreement Contractor has with OWNER, including demands arising from injuries or death of persons (Subcontractor's employees included) and damage to property, arising directly or indirectly out  of the obligations herein undertaken or out of the operations conducted by Subcontractor, save and except claims or litigation arising through the sole negligence or sole willful misconduct of Contractor, and will make good to and reimburse Contractor for any expenditures, including reasonable attorney's fees.  Contractor may make by reason of such matters and, if requested by Contractor, will defend any  such suits at the sole cost and expense of Subcontractor.

**5.3    Indemnification of Patent Rights.**  Subcontractor shall indemnify and hold Contractor harmless against  any claim, suit or action, or any alleged violation or infringement of patent rights which may be made against Contractor by reason of the use in connection with or as a part of the performance of the work or   the furnishing of the materials hereunder, of anything which is now or may hereafter be covered by patent, copyright or anything which is now or may hereafter be covered by patent, copyright or trademark, and also against all expense, including attorney's fees, which Contractor may incur in defending or adjusting any such claim, suit or action.

**6.  SUSPENSION**

Subcontractor ( Initials)
Mc Cullough Plumbing

- 22 -

Contract # 785-013

Halbert (Initials)

Version 1001.12.10.2012



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203      El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

6.1     **Suspension.** Contractor may, for its convenience or by direction, or by acts-of-God or nature, suspend the work, either in whole or in part, at any time upon written notice to Subcontractor stating the nature, effective date and anticipated duration of such suspension. Whereupon such notice, Subcontractor shall suspend its work to the extent specified and shall place no further orders or perform no other work except as permitted by Contractor's notice of suspension.  During the period of such suspension, Subcontractor shall protect and care for all work, materials and equipment at the project site or at storage areas under Subcontractor's responsibility. The Subcontract price shall be adjusted as provided in Article 3 if the cost of the work is increased or decreased by reason of such suspension.  If additional time for completion of the work is required as a result of such suspension, Subcontractor shall submit a written request for additional time within 7 days of the end of the suspension.  Failure to submit a timely written request for additional time due to such suspension shall result in no extension of time being granted.

7.  **DISPUTES:**

7.1     **Scope of Subcontract.** In the event of a dispute arising between Contractor and Subcontractor with respect to whether the Subcontract, including drawings specifications and attachments, requires Contractor (and thus, perhaps, Subcontractor) to furnish any material or perform any labor, the decision of the Contractor shall be conclusive and binding.  Should there be disagreement of this decision, then the matter in question shall be determined as provided in Paragraph 7.2.

7.2     **Jurisdiction/Venue/Recovery of Attorney Fees, Interest, Etc.** The parties agree that jurisdiction and venue for any civil action or dispute arising under this Subcontract shall be the Superior Court of California, County of San Diego – Central Division.  In the event it becomes necessary for either party to enforce the provisions of this Subcontract or to obtain redress for the violation of any provision hereof the prevailing party shall be entitled to recover from the other party all costs, reasonable attorneys' fees, and expenses associated with such action, including statutory interest.

7.3     **Consequential Damages.** Under no circumstances shall the Contractor be liable to the Subcontractor for consequential damages including, but not limited to, loss of use or loss of profit irrespective of whether resulting from negligence.

8.  **ADDITIONAL PROVISIONS:**

8.1     **Bonding of Subcontractor.**  Concurrently with the execution of this Agreement, or at any time during its performance, Subcontractor shall, if required by Contractor, execute a Labor and Material Bond and Faithful Performance Bond, in an amount equal to 100% of the Contract Price in Section 3.  Said bonds shall be executed by a corporate surety acceptable to Contractor and shall be in a form satisfactory to Contractor.  Contractor shall pay the premium on said bonds unless otherwise provided herein or in the Contract Documents.

Subcontractor ( Initials)
Mc Cullough Plumbing

- 23 -

Contract # 785-013

Halbert (Initials)

Version 0001.11.25.2011



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203     El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

8.2 **Assignment, Etc.** Subcontractor agrees not to transfer, subcontract, or assign this Subcontract or any part thereof without the prior written consent of Contractor. Subcontractor's rights to moneys due hereunder are non-assignable except with the written consent of Contractor.  Any assignment of moneys due hereunder made without such consent is void.

8.3 **Sole and Entire Subcontract.** This Subcontract is the sole agreement between the parties. All verbal or written terms, conditions, proposals, opinions, representations, negotiations, and agreements made prior to the date of this Subcontract has, where appropriate, been made part of this Subcontract. This Subcontract shall be binding upon the heirs, administrators, executors, successors and assigns of the parties hereto. Except as specifically prescribed herein, this Subcontract shall not create any rights of or confer benefits upon, third parties.  Except as otherwise provided for herein, no modification or change of the terms of this Subcontract shall be binding on Contractor unless approved in writing by an authorized officer or the designated Project Manager of the Contractor.

8.4 **Acts and Omissions.** Any act or omission of Contractor which Subcontractor might claim as an excuse for his own failure to perform shall be deemed waived by Subcontractor unless he shall notify Contractor of his intention to assert such excuse within 7 days after the occurrence of any such act or omission.  Subcontractor waives any right it might have to assert the provisions of California Civil Code Section 1654 against Contractor.

8.5 **Notice.** Any notice given to a party shall be directed to such party and delivered by certified mail, email or hand delivery to an agent of the Contractor/Subcontractor. Such notice shall be effective at the time received at the address indicated herein of such party.

8.6 **Days.**  All references to day or days shall mean calendar days.

8.7 **Non Enforcement Not a Waiver.** The failure of the Contractor to enforce any provision of this agreement shall not constitute a waiver for the future enforcement of that provision and shall not constitute a waiver of the enforcement of any other provision.

8.8 **Validity.** The invalidity of any portion of this agreement whether declared invalid by a court or otherwise shall not affect the validity of the remainder of the agreement.

8.9 **Severability.** Any provision of this Subcontract determined to be in violation of any law applicable thereto shall be void but that shall not affect the validity and enforceability of all other provisions hereof.

8.10 **Governing Law/Jurisdiction.** This Subcontract shall be subject to the laws of the State of California and deemed to have been made in and shall be interpreted under the laws in the jurisdiction of the State of California.  The place of jurisdiction and venue for any

Subcontractor ( Initials)
Mc Cullough Plumbing

- 24 -.

Halbert (Initials)

Contract # 785-013

Version 1000.11.25.2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0061348

civil action or dispute arising under this Subcontract shall be the Superior Court of California, County of San Diego - Central Division.

8.11 **Independent Contractor Status.** Subcontractor is an independent contractor and shall, at his sole cost and expense, and without increase in the Contract Price, comply with all laws, rules, ordinances, and regulation of all governing bodies having jurisdiction over the work; obtain all necessary permits and licenses therefore; pay all manufacturers' taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and Unemployment which are measured by wages, salaries, or other remuneration paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. Subcontractor, upon request, shall furnish evidence satisfactory to Contractor that any or all of the foregoing obligations have been fulfilled.  Subcontractor will perform all services under this Subcontract as an independent contractor and not as an employee or agent of Contractor. Subcontractor's work will be reviewed by Contractor to ensure that the work meets Contractor's standards.  Subcontractor is not authorized to assume or create any obligation or responsibility, express or implied, on behalf of, or in the name of Contractor or to bind Contractor in any manner.  Nothing contained in this Subcontract shall be construed to create any form of employment agreement or imply any relationship between Contractor and Subcontractor as employer and employee.

8.12 **No Benefits.** Subcontractor is not entitled to participate in any of Contractor's employee benefit plans and will not be permitted to make social security or other employment tax contributions through Contractor.

8.13 **Reporting and Payment of Taxes.** Contractor will properly report all compensation paid to Subcontractor in Box 7 (entitled "Non-employee Compensation") of Form 1099_MISC, or such other equivalent form and box as may be prescribed by the Internal Revenue Service at the time reporting is required.  Accordingly, Subcontractor will be responsible for the payment of all state and federal income taxes associated with the compensation paid pursuant to this Subcontract. Furthermore, Subcontractor will be responsible for the withholding and payment of all state and federal income and employment taxes associated with the compensation of Subcontractor's employees.

8.14 **Protection of Work.**  Subcontractor shall effectually secure and protect the work done hereunder and assume full responsibility of the condition thereof until final acceptance by Architect, Owner, and Contractor. Subcontractor further agrees to provide such protection as is necessary to protect the work and the workmen of the Contractor and other subcontractors from his operations. Subcontractor shall be liable for any loss or damage to any work in place or to any equipment and materials on the job site caused by him or his agents, employees or guests.

8.15 **Security Clearances.** It is the sole responsibility of the Subcontractor to ensure that Subcontractor's employees have proper security clearances to the project site.  All Subcontractor employees must be able to pass a background check and maintain proper and required auto insurances on their vehicles.  Failure to obtain or maintain proper

Subcontractor ( Initials)                                            - 25 -                                            Halbert (Initials)

Mc Cullough Plumbing                                Contract # 785-013                                Version 30CL15.25 2013



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA 92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

security clearances resulting in loss of production time is not the responsibility of the Contractor and will not be grounds for time extension.

9.   TERMINATION OF AGREEMENT:

In the event the prime contract is terminated prior to its completion, SUBCONTRACTOR shall be entitled only to payment for the work actually completed by it at the pro rate of the price herein set forth unless CONTRACTOR itself receives additional compensation or   damages on account of such termination; in which event, SUBCONTRACTOR shall be entitled to such proportion of the additional compensation or damages actually received as is equitable under all of the circumstances.  Nothing herein contained shall require CONTRACTOR to make any claim against PRIME CONTRACTOR/OWNER for such additional compensation or damages in the event of termination before completion, and it is specifically agreed that the failure of CONTRACTOR to prosecute any such claim against PRIME CONTRACTOR/OWNER shall not entitle SUBCONTRACTOR to any claim for additional compensation or damages against CONTRACTOR.

Notwithstanding the preceding paragraph, CONTRACTOR reserves the absolute right to terminate this Agreement.  In the event of termination without cause, SUBCONTRACTOR shall be entitled to payment only as follows:

If payment under this Agreement is to be made on a unit price basis, SUBCONTRACTOR shall be entitled to payment for the number of units completed. Completion to be a matter to be determined solely at the discretion of the CONTRACTOR.

If payment under this Agreement is to be made on a lump sum basis, SUBCONTRACTOR shall be entitled to payment on a pro rate basis for the portion of the work completed. Said pro rate determination to be solely at the discretion of the CONTRACTOR.

There shall be deducted from such sums as provided in this paragraph the amount of any payments made to SUBCONTRACTOR prior to the date of termination of this Agreement.  SUBCONTRACTOR shall not be entitled to any claim, or claim of lien, against CONTRACTOR or against PRIME CONTRACTOR/OWNER for any additional compensation or damages in the event of such termination and payment.

In the event this Agreement is terminated for cause, SUBCONTRACTOR shall not be entitled to receive any further payment until the work undertaken by CONTRACTOR in his prime contract is complete.  At that time, if the amounts earned but not paid SUBCONTRACTOR before said termination exceed the expenses incurred by CONTRACTOR in finishing SUBCONTRACTOR'S work, any excess shall be paid by CONTRACTOR to SUBCONTRACTOR; but , if such expense shall exceed the said amount earned and unpaid, SUBCONTRACTOR shall promptly pay to CONTRACTOR the amount by which the expense exceeds said sum.  The expense incurred by CONTRACTOR, as just referred to, shall include CONTRACTOR'S expense for furnishing material, for finishing the work, for attorney's fees, and any damages incurred by CONTRACTOR by reason of SUBCONTRACTOR'S default.

Subcontractor ( Initials)
Mc Cullough Plumbing

- 26 -

Contract # 785-013

Halbert (Initials)

Version 1501.11.25.2011



**HALBERT CONSTRUCTION CO., INC**
330 South Magnolia Ave, Ste. 203    El Cajon, CA  92020
Ph (619) 593-3527 Fax (619) 447-4192

California License #: 521605
Nevada License #: 0051348

CONTRACTOR may terminate the Agreement in the event that SUBCONTRACTOR, or any of his subcontractors, is listed by the Administrative Office of the various Employee Fringe Benefit Trusts, including, but not limited to, Health and Welfare, Pension, Vacation, or Apprenticeship Trusts, as being delinquent in payment or payments to any such trust, regardless of the project in connection with which the delinquency or delinquencies occurred.  With respect to any and all payments to be made by CONTRACTOR to said SUBCONTRACTOR under this Agreement, CONTRACTOR at his option may issue joint checks payable to SUBCONTRACTOR and any of the Employee Fringe Benefit Trusts referred to herein to the extent necessary to assure that payment required from SUBCONTRACTOR or any of his subcontractors with respect to work performed under this Agreement are paid.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement for themselves, their heirs, executors, successors, administrators, and are duly authorized to enter into this Subcontract and bind the respective entities on whose behalf they are signing.

Company: McCullough Plumbing Inc.

Name: Robert McCullough

Title: President

By: _Signature_  3/3/14  _Date_

☑ Corporation   ☐ Partnership   ☐ Proprietorship

HALBERT CONSTRUCTION COMPANY INC.

Kenneth Steidl

Project Manager

By: _Signature_  3/20/14  _Date_

TAX ID#: 33-0269612

Subcontractor's License #: 559526

Subcontractor ( Initials)
Mc Cullough Plumbing

- 27 -

Halbert (Initials)

Contract # 785-013

Version 1001.11.15.2013

March 31, 2014



# EXHIBIT G: Exclusions and Clarifications to subcontractor agreement dated 1-27-14. For the Dining Facility & Administration Building Presidio of Monterey Project Number: W91238-13-0012

1) Provide access panels only, to be installed by others.
2) Excludes permits, fees, engineering, and soil testing and staking.
3) Excludes removal of spoils, soils, trash and debris from site. All trash and debris will be thrown in trash dumpsters provided by contractor.
4) Excludes dewatering of site trenches.
5) Excludes concrete or asphalt patchback.
6) Excludes temporary water or power beyond 100 feet of work area.
7) Excludes landscape and irrigation removal or replacement.
8) Excludes import, export, and drying of soils.
9) Excludes restroom accessories, grab bars and/or shower seats.
10) Excludes fire sprinkler piping, hose cabinets and/or fire extinguishers.
11) Excludes perforated pipe, footing drains.
12) Excludes electrical, conduit, wiring switches (high and/or low voltage).
13) Excludes shutdown. (by others)
14) Excludes handling or removal of toxic waste, asbestos or other hazardous material.
15) Excludes any and all lead flashings except for the plumbing vents that penetrate roof.
16) Excludes X-raying and/or use of magnetic imagery to examine concrete walls, floors and/or structures.
17) Excludes Starter Motors, Electrical Wiring and Disconnects for any electrical equipment even if supplied by McCullough Plumbing, Inc. This exclusion covers high or low voltage controls, wiring, and or electrical boxes.
18) Excludes Bollard.
19) Excludes S.W.P.P.P.'s requirements, except pertaining to plumbing work as described in proposal.
20) Excludes painting



21) Excludes Splash blocks
22) Excludes CAD/ 3D drawings
23) Excludes concrete basins
24) Excludes any lease fees for staging area. It is expected that a staging area to store
    material on site provided by the Owner.
25) Connection to exterior site main lines by others unless exterior site utility lines are installed
    and ready for connection to building plumbing lines stubbed out five (5) feet.

McCullough Plumbing                                    Halbert Construction Company, Inc.



April 1, 2014

McCullough Plumbing, Inc.
2321 Auto Park Way
Escondido, CA 92029

Re:          Project Name: Monterey Dining Facility
             Project# 785

Please find an executed contract for the Monterey Dining Facility, Monterey, CA

Should you have any questions or concerns please feel free to contact the Project Manager Kenny
Steidl at Ksteidl@halbertco.com

Regrettably there was some required paperwork that was not returned with your contract.
The following paperwork will be needed to be received prior to starting on the project:

- Bond
- Point of Contact
- Sub-tiers
- New Insurance Certifications for General Liability and Auto (showing expired on 4/01/14)

Should you need any of these forms please feel free to contact me at sbunney@halbertco.com

We look forward to working with you on this project.


Thank You

Sincerely,

Sarah Bunney
Office Relations Administrator

---

**Exhibit 2**


**THE GUARANTEE**

RECEIVED

MAY 1 5 2014

Halbert Construction

## SUBCONTRACT PERFORMANCE BOND

Bond No. 12099597
Premium $21,588.00

KNOW ALL MEN BY THESE PRESENTS:

That we McCullough Plumbing Inc., 2321 Auto Park Way, Escondido, CA 92029

(Name and address of Principal), as Principal (hereinafter the "Subcontractor"), and THE GUARANTEE COMPANY OF NORTH AMERICA USA, One Towne Square, Suite 1470, SOUTHFIELD, MI 48076, a corporation duly incorporated under the laws of the State of Michigan as Surety, (hereinafter the "Surety"), are held and firmly bound unto Halbert Construction Co., Inc., 330 South Magnolia Ave., Suite 203, El Cajon CA 92020

(Name and address of Contractor) (hereinafter the "Obligee"), in the sum of One Million Seventy-Nine Thousand Three Hundred Seventy-Five and No/100ths——————— Dollars ($ 1,079,375.00 —— ) (hereinafter the "Penal Sum"), for the payment whereof the Subcontractor and Surety bind themselves, and their respective heirs, administrators, executors, successors and assigns, jointly and severally.

WHEREAS, the Subcontractor has by written agreement dated January 27, 2014

——————————————————————— (hereinafter the "Subcontract") entered into a subcontract with the Obligee for the performance of Plumbing work for the Monterey Dining Facility, Project No. W91238-13-C-0012

(Describe the work ) (hereinafter the "Subcontract Work), for and at the Bldg 629-Presidio of Monterey

(hereinafter, the "Project") located at West Rifle Range Road and Caffrey Court, Monterey, CA 93944

in accordance with drawings and specifications prepared by ————————————————

——————————————————————————————————(Insert name and address of Architect/Engineer) which Subcontract is by reference made a part hereof; except as otherwise provided herein.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if the Subcontractor shall perform the Subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect, subject to the conditions set forth herein below.

1.  The Surety's obligations and undertakings hereunder shall arise only in the event that the Obligee is not itself in default of any provision or provisions of the Subcontract.

2.  If the Obligee is not in default, and the Obligee contends that the Subcontractor is in default under the Subcontract, the Surety's obligations hereunder shall arise only after:

    2.1    The Obligee shall notify the Surety and the Subcontractor, in writing, by registered or certified mail, return receipt requested, describing with reasonable particularity the basis for the Obligee's

Subcontractor Performance Bond - Rev. 2/20/2013

Excellence, Expertise, Experience ... Every Time

The Guarantee Company of North America USA
One Towne Square, Suite 1470
Southfield, Michigan 48076
Tel 248-281-0281 • Fax 248-750-0431 • 1-866-328-0567
gcna.com

contention that the Subcontractor is in default, and requesting a meeting to occur among representatives of the Obligee, Subcontractor and the Surety not later than fifteen (15) days after the receipt of such notice, to discuss the matters raised in the notice and the further performance of the Subcontract by any party; and

2.2.  The Obligee has declared the Subcontractor to be in default and formally terminated the Subcontractor's right to complete the Subcontract. The Obligee shall not declare the Subcontractor to be in default earlier than twenty (20) days after the Surety and the Subcontractor have received notice as provided in paragraph hereinabove; and

2.3.  The Obligee has agreed to pay the Balance of the Subcontract Price to the Surety in accordance with the terms of the Subcontract, or to another contractor selected to perform the Subcontract by the Surety at the written direction of the Surety, or in any other manner reasonably requested by the Surety. The "Balance of the Subcontract Price" is herein defined as the total amount payable by the Obligee to the Subcontractor under the Subcontract after all proper adjustments have been made thereto, including any allowances due the Subcontractor from the Obligee in settlement of any insurance or other claims for damages to which the Subcontractor is entitled, and reduced by all valid and proper payments made to or on behalf of the Subcontractor under the Subcontract.

3.  After the Obligee has satisfied the conditions of Paragraphs 2.1, 2.2 and 2.3 hereinabove, then the Surety, at its option and at its expense, shall take one of the following actions:

3.1.  Arrange for the Subcontractor to perform and complete the Subcontract; or

3.2.  Enter into a takeover agreement with the Obligee and undertake to perform and complete, or cause the completion of the Subcontract, either itself, or through any agents or independent contractors of its choosing; or

3.3.  Obtain bids or negotiated proposals from qualified contractor(s) reasonably acceptable to the Obligee, for the completion of the Subcontract. Thereafter, the contractor(s) selected with the Obligee's concurrence, which shall not be unreasonably withheld, shall contract directly with the Obligee for the completion of the Subcontract (hereinafter, the "Completion Subcontract"). The Completion Subcontract shall be secured with a performance and payment bond executed by a qualified surety, equivalent to the bond or bonds issued in connection with the Subcontract. At the time the Obligee executes the Completion Subcontract, the Surety shall pay to the Obligee any difference between the price of the Completion Subcontract and the Balance of the Subcontract Price; subject to the limit of the Surety's liability as stated in the Penal Sum; or

3.4.  After investigation, determine the amount of money, if any, required to complete the Subcontract and tender payment therefore to the Obligee; or

3.5.  Deny liability in whole or in part.

4.  The responsibilities of the Surety to the Obligee hereunder shall not in any event be greater than those of the Subcontractor to the Obligee under the Subcontract. The responsibilities of the Obligee to the Surety shall not be greater than those of the Obligee under the Subcontract. The Obligee hereby commits the Balance of the Subcontract Price to the Surety in mitigation of any costs incurred by the Surety in



completing or causing the completion of the Subcontract, or in otherwise performing its obligations, if any, hereunder. Under any circumstances, the Surety's liability hereunder shall not exceed the Penal Sum of this Bond.

5.   The Surety shall not be liable to the Obligee or others for any obligations of the Subcontractor that are unrelated to the Subcontract, and the Balance of the Subcontract Price shall not be reduced or set-off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Obligee or its heirs, executors, administrators or assigns

6.   Any proceeding, legal or equitable, under this Bond, must be instituted in a court of competent jurisdiction in the jurisdiction in which the Project or any part of it is located. Any proceeding, legal or equitable, must be instituted, if at all, within one (1) year after the Subcontractor first defaulted and/or was declared by the Obligee to be in default, or within one (1) year after the Subcontractor ceased work on the Project, or within one (1) year after the Surety has refused to perform pursuant to this Bond, whichever first occurs. If the provisions of this paragraph are void or prohibited by law, the minimum period of limitations available to sureties as a defense in the jurisdiction where any proceeding is instituted shall apply.

7.   Notice to the Surety, the Obligee and/or the Subcontractor shall be mailed or delivered to the addresses shown hereinabove.

8.   If and when this Bond has been furnished to comply with any statutory or other legal requirement pertaining in any location where the Project is located, any provision in this Bond conflicting with said statutory or other legal requirements shall be deemed deleted here from and the minimum provisions conforming to such statutory or other legal requirements shall be deemed incorporated herein.

Signed, sealed and dated this __13th__ day of __May__ __2014__ .

McCullough Plumbing, Inc.

Witness

BY: 

ITS: __President__

The Guarantee Company of North America USA

Witness

BY: 
Attorney-In-Fact   Tara Bacon

Subcontractor Performance Bond – Rev. 2/20/2013



## ACKNOWLEDGMENT

State of California
County of _____ San Diego _____ )

On __May 13, 2014_____ before me, __Maria Hallmark, Notary Public_____
                                          (insert name and title of the officer)

personally appeared ___Tara Bacon_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)

MARIA HALLMARK
Commission # 1986082
Notary Public - California
San Diego County
My Comm. Expires Aug 22, 2016



# THE GUARANTEE™

## The Guarantee Company of North America USA
### Southfield, Michigan

## POWER OF ATTORNEY

KNOW ALL BY THESE PRESENTS: That THE GUARANTEE COMPANY OF NORTH AMERICA USA, a corporation organized and existing under the laws of the State of Michigan, having its principal office in Southfield, Michigan, does hereby constitute and appoint

**Kyle King, Dale Hampaw, Tara Bacon, John R. Quaiin**
**BB&T Insurance Services of California, Inc.**

its true and lawful attorney(s)-in-fact to execute, seal and deliver for and on its behalf as surety, any and all bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof, which are or may be allowed, required or permitted by law, statute, rule, regulation, contract or otherwise.

The execution of such instrument(s) in pursuance of these presents, shall be as binding upon THE GUARANTEE COMPANY OF NORTH AMERICA USA as fully and amply, to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at the principal office.

The Power of Attorney is executed and may be certified so, and may be revoked, pursuant to and by authority of Article IX, Section 9.03 of the By-Laws adopted by the Board of Directors of THE GUARANTEE COMPANY OF NORTH AMERICA USA at a meeting held on the 31st day of December, 2003.

The President, or any Vice President, acting with any Secretary or Assistant Secretary, shall have power and authority:

1. To appoint Attorney(s)-in-fact, and to authorize them to execute on behalf of the Company, and attach the Seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof, and

2. To remove, at any time, any such Attorney-in-fact and revoke the authority given, except as provided below

3. In connection with obligations in favor of the Florida Department of Transportation only, it is agreed that the power and authority hereby given to the Attorney-in-Fact includes any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts required by the State of Florida Department of Transportation. It is fully understood that consenting to the State of Florida Department of Transportation making payment of the final estimate to the Contractor and/or its assignee, shall not relieve this surety company of any of its obligations under its bond.

4. In connection with obligations in favor of the Kentucky Department of Highways only, it is agreed that the power and authority hereby given to the Attorney-in-Fact cannot be modified or revoked unless prior written personal notice of such intent has been given to the Commissioner – Department of Highways of the Commonwealth of Kentucky at least thirty (30) days prior to the modification or revocation.

Further, this Power of Attorney is signed and sealed by facsimile pursuant to resolution of the Board of Directors of the Company adopted at a meeting duly called and held on the 6th day of December, 2011, of which the following is a true excerpt:

RESOLVED that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any Power of Attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, contracts of indemnity and other writings obligatory in the nature thereof, and such signature and seal when so used whether heretofore or hereafter, shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, THE GUARANTEE COMPANY OF NORTH AMERICA USA has caused this instrument to be signed and its corporate seal to be affixed by its authorized officer, this 23rd day of February, 2012.

THE GUARANTEE COMPANY OF NORTH AMERICA USA



Stephen C. Ruschak, Vice President          Randall Musselman, Secretary

STATE OF MICHIGAN
County of Oakland

On this 23rd day of February, 2012 before me came the individuals who executed the preceding instrument, to me personally known, and being by me duly sworn, said that each is the herein described and authorized officer of The Guarantee Company of North America USA; that the seal affixed to said instrument is the Corporate Seal of said Company; that the Corporate Seal and each signature were duly affixed by order of the Board of Directors of said Company.

Cynthia A. Takai
Notary Public, State of Michigan
County of Oakland
My Commission Expires February 27, 2018
Acting in Oakland County

IN WITNESS WHEREOF, I have hereunto set my hand at The Guarantee
Company of North America USA offices the day and year above written.

Cynthia A. Takai

I, Randall Musselman, Secretary of THE GUARANTEE COMPANY OF NORTH AMERICA USA, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney executed by THE GUARANTEE COMPANY OF NORTH AMERICA USA, which is still in full force and effect.

IN WITNESS WHEREOF, I have thereunto set my hand and attached the seal of said Company this ___13th___ day of ___May___ , ___2014___ .

Randall Musselman, Secretary



**THE GUARANTEE**

## SUBCONTRACT LABOR AND MATERIAL PAYMENT BOND

BOND NO: 12099597

KNOW ALL MEN BY THESE PRESENTS:

That we  McCullough Plumbing Inc., 2321 Auto Park Way, Escondido, CA 92029                                    (name and

address of Subcontractor) as Principal (hereinafter the "Subcontractor") and THE GUARANTEE COMPANY OF NORTH

AMERICA USA, One Towne Square, Suite 1470, Southfield, Michigan 48076, a corporation duly incorporated under the

laws of the State of Michigan, as Surety, and are held and firmly bound unto _____

 Halbert Construction Co., Inc., 330 South Magnolia Ave, Ste 203, El Cajon, CA 92020                    (name and address

of Contractor) hereinafter, the "Obligee") in the sum of  One Million Seventy-Nine Thousand Three Hundred Seventy-Five

($ 1,079,375.00———        ) Dollars  (hereinafter the "Penal Sum"), for the payment whereof the Subcontractor and Surety

bind themselves and their respective heirs, executors, administrators, successors and assigns, jointly and severally, firmly

by these presents.

WHEREAS, the Subcontractor has by written agreement dated January 27, 2014                        , (hereinafter the

"Subcontract") entered into a subcontract with the Obligee for the performance of Plumbing work for the Monterey Dining

Facility, Project No. W91238-13-C-0012          (hereinafter, the "Subcontract Work"), for and at the Bldg 629-Presidio

of Monterey                              (hereinafter, the "Project") located at  West Rifle Range Road and Caffrey Court

 Monterey, CA 93944                                        in accordance with drawings and specifications prepared

by _____ (name and address

of Architect/Engineer).

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Subcontractor shall promptly make
payment to all Claimants, as hereinafter defined, for labor and materials used or reasonably required for use in the
performance of the Subcontract, then this obligation shall be null and void, otherwise, it shall remain in full force and effect;
SUBJECT, HOWEVER, to the following express conditions precedent and definitions:

(1)     A "Claimant" is defined as one having a direct contract with the Subcontractor, or with a subcontractor of the
        Subcontractor, for labor, material or both, used or reasonably required for use in the performance of the Contract.

(2)     The Subcontractor, the Surety and the Obligee hereby agree, jointly and severally, and the Surety hereby undertakes,
        that every Claimant as hereinabove defined, who has not been paid in full before the expiration of ninety (90) days
        after the date on which the last of such Claimant's work or labor was done or performed, or materials were furnished
        by such Claimant, may thereafter sue on this bond for the use of such Claimant, prosecute suit to final judgment for
        such sum or sums as may be justly due Claimant, and have execution thereon; as further expressly conditioned
        herein below.  The Obligee shall not be liable for the payment of any costs or expenses of any such suit.

(3)     No Claimant shall be entitled to any recovery against the Surety hereunder, and no suit or action shall be commenced
        hereunder by any Claimant, unless and until the following express conditions precedent have been met or performed
        by the Claimant; and/or as otherwise limited herein below:

The Guarantee Company of North America USA
One Towne Square, Suite 1470
Southfield, Michigan 48076

Excellence, Expertise, Experience ... Every time
Tel 248-281-0281 · Fax 248 750 0431 · 1-866-328-0567
gcna.com

(3a) The Claimant, as hereinabove defined, shall have given written notice to the Subcontractor, the Obligee and the Surety within ninety (90) days after such Claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed, describing the work or labor performed and/or the materials provided, and providing the name of the person or entity to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, return receipt requested, in envelopes addressed to the Subcontractor, the Obligee and the Surety at any place where they or each of them regularly maintain any office for the transaction of business, or served on the Subcontractor, the Obligee and the Surety in any manner in which legal process may be served in the state in which the aforesaid Project is located, save that such service need not be made by a public officer;

(3b) Any suit on this Bond must be commenced, if at all, within one (1) year following the date on which the Claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made; it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law;

(3c) Any suit on this Bond must be brought in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the District in which the Project, or any part thereof, is situated, and not elsewhere.

(4) The liability and the undertaking of the Surety hereunder shall in no event exceed the Penal Sum set forth hereinabove.

(5) The amount of this bond shall be reduced by and to the full extent of any and all payments made by the Surety in good faith hereunder, inclusive of the payment by the Surety of any mechanics' liens which may be filed of record against the Project, whether or not the claim for the amount of such lien be presented under and against this bond, and whether or not any payments made in good faith by the Surety hereunder were actually due, subject to defense, set-off, contested or uncontested by any party.

Signed, sealed and dated this ____13th____ day of ____May____ 2014____

|  | McCullough Plumbing, Inc. |
| --- | --- |
| _____ Witness | BY: _____ (SEAL) Principal |
|  | ITS: _____President_____ |
|  | The Guarantee Company of North America USA |
| _____ Witness | BY: _____ (SEAL) Attorney-In-Fact  Tara Bacon |

Subcontract Labor & Material Payment Bond · Rev. 2/20/13

Page 2

THE GUARANTEE™

## ACKNOWLEDGMENT

State of California
County of _____ San Diego _____ )

On ___May 13, 2014_____ before me, ___Maria Hallmark, Notary Public_____

(insert name and title of the officer)

personally appeared ___Tara Bacon_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)

MARIA HALLMARK
Commission # 1966082
Notary Public • California
San Diego County
My Comm. Expires Aug 22, 2016



**THE GUARANTEE**

**The Guarantee Company of North America USA**
Southfield, Michigan

## POWER OF ATTORNEY

KNOW ALL BY THESE PRESENTS: That THE GUARANTEE COMPANY OF NORTH AMERICA USA, a corporation organized and existing under the laws of the State of Michigan, having its principal office in Southfield, Michigan, does hereby constitute and appoint

Kyle King, Dale Harshaw, Tara Bacon, John R. Quain
BB&T Insurance Services of California, Inc.

its true and lawful attorney(s)-in-fact to execute, seal and deliver for and on its behalf as surety, any and all bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof, which are or may be allowed, required or permitted by law, statute, rule, regulation, contract or otherwise.

The execution of such instrument(s) in pursuance of these presents, shall be as binding upon THE GUARANTEE COMPANY OF NORTH AMERICA USA as fully and amply, to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at the principal office.

The Power of Attorney is executed and may be certified so, and may be revoked, pursuant to and by authority of Article IX, Section 9.03 of the By-Laws adopted by the Board of Directors of THE GUARANTEE COMPANY OF NORTH AMERICA USA at a meeting held on the 31st day of December, 2003. The President, or any Vice President, acting with any Secretary or Assistant Secretary, shall have power and authority:

1. To appoint Attorney(s)-in-fact, and to authorize them to execute on behalf of the Company, and attach the Seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof; and
2. To revoke, at any time, any such Attorney-in-fact and revoke the authority given, except as provided below.
3. In connection with obligations in favor of the Florida Department of Transportation only, it is agreed that the power and authority hereby given to the Attorney-in-Fact includes any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts required by the State of Florida Department of Transportation. It is fully understood that consenting to the State of Florida Department of Transportation making payment of the final estimate to the Contractor and/or its assignee, shall not relieve this surety company of any of its obligations under its bond.
4. In connection with obligations in favor of the Kentucky Department of Highways only, it is agreed that the power and authority hereby given to the Attorney-in-Fact cannot be modified or revoked unless prior written personal notice of such intent has been given to the Commissioner – Department of Highways of the Commonwealth of Kentucky at least thirty (30) days prior to the modification or revocation.

Further, this Power of Attorney is signed and sealed by facsimile pursuant to resolution of the Board of Directors of the Company adopted at a meeting duly called and held on the 5th day of December 2011, of which the following is a true excerpt:

RESOLVED that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any Power of Attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, contracts of indemnity and other writings obligatory in the nature thereof, and such signature and seal when so used shall have the same force and effect as though manually affixed.



IN WITNESS WHEREOF, THE GUARANTEE COMPANY OF NORTH AMERICA USA has caused this instrument to be signed and its corporate seal to be affixed by its authorized officer, this 23rd day of February, 2012.

THE GUARANTEE COMPANY OF NORTH AMERICA USA

**STATE OF MICHIGAN**
**County of Oakland**

Stephen C. Ruschak, Vice President          Randall Musselman, Secretary

On this 23rd day of February, 2012 before me came the individuals who executed the preceding instrument, to me personally known, and being by me duly sworn, said that each is the herein described and authorized officer of The Guarantee Company of North America USA; that the seal affixed to said instrument is the Corporate Seal of said Company; that the Corporate Seal and each signature were duly affixed by order of the Board of Directors of said Company.

Cynthia A. Takai
Notary Public, State of Michigan
County of Oakland
My Commission Expires February 27, 2018
Acting in Oakland County

IN WITNESS WHEREOF, I have hereunto set my hand at The Guarantee Company of North America USA offices the day and year above written.

Cynthia A. Takai

I, Randall Musselman, Secretary of THE GUARANTEE COMPANY OF NORTH AMERICA USA, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney executed by THE GUARANTEE COMPANY OF NORTH AMERICA USA, which is still in full force and effect.



IN WITNESS WHEREOF, I have hereunto set my hand and attached the seal of said Company this   13th day of  May          , 2014

Randall Musselman, Secretary

# Exhibit 3



242 WEST LARCH ROAD, SUITE F I  TRACY, CA 93033  I 209.839.2890 I FAX 209.839.2895

November 11, 2013

Mr. Kenneth Steidl
**Halbert Construction Company Inc.**
330 South Magnolia
El Cajon, CA 92020

> ### Subject:  Cost Proposal for Materials Testing / Special Inspection Services

> ### Project:  Administration Facility and Dining Hall
> ### Presidio of Monterey (W91238-13-C-0012)
> ### Monterey, California

Dear Kenneth,

At your request, CTE Cal, Inc. is pleased to present our estimated cost proposal to provide **Materials Testing, Special Inspection and Engineering Support Services** during construction of the subject project. Our proposal is based on my review of the plans, discussions with you regarding construction schedule and our experience with working on other projects at the **Presidio of Monterey.**

CTE Cal, Inc. is a complete service, consulting firm with offices and personnel networking throughout California & Nevada.  We are recognized by the East Bay Area and Monterey Chapters of the International Conference of Business Officials (**ICBO**), certified by the **U.S. Navy, U.S. Army Corps of Engineers** and the National Bureau of Standards (**CCRL & AMRL**).   All of our Testing and Inspection procedures are supervised by a staff of experienced professionals, which includes registered Civil & Geotechnical Engineers and **ACI, ACIA, AWS, ASNT** and **ICBO** certified inspectors.

Based on our qualifications and strong commitment to your quality control/engineering needs, CTE Cal, Inc.  will provide our services for **Halbert Construction Co** in a cost effective manner. Should you have questions regarding our **rates,** or **qualifications**, please do not hesitate to contact us directly at **209/388-9933.** We look forward to our continued working relationship with you on this, as well as, future projects.

Sincerely,
**Construction Testing & Engineering, Inc.**

Kirt Lamb
Regional Manager, Northern California
*Mktg/Prop/13-150/11-11-2013)*

## NOTES

All services are to be provided on a "time and materials basis", or "Lump Sum" as requested through you or your authorized representative.

Additional laboratory testing and field inspection services are available and will be quoted as requested and based on ***CTE Cal, Inc. established January 1, 2013 Fee Schedule.***

Hourly rates/unit costs as stated are in effect from ***January 1, 2013 through completion of project***, provided construction begins within 90 days of proposal date.

## BASIS OF CHARGES

Charges will be made on a time and materials basis for work performed in accordance with the rates stated in the proposal. The basic hourly rates are quoted on an individual project basis or as per CTE Cal, Inc. published ***January 1, 2013 Fee Schedule***.

Estimates are based on quantities and schedules furnished by others. Where schedules are not available, assumptions are made to develop an estimated cost of services. CTE Cal, Inc. must conform to the contractors' schedules and these can vary according to job conditions.

### Basis of Charges and Expenses

| | |
|---|---|
| Work from 0-2 Hours | 2-Hour Minimum Billing |
| Work from 2-4 Hours | 4-Hour Minimum Billing |
| Work from 4-6 Hours | 6-Hour Minimum Billing |
| Work from 6-8 Hours | 8-Hour Minimum Billing |
| Show-Up Time | 2-Hour Minimum Billing |
| Work over 8 hours, Saturdays | Time and One Half |
| Work on Sundays, Holidays | Double Time |
| Swing/Graveyard Shift | 10% Premium |
| Trip Charge | $75.00/trip |
| Reimbursables | Cost plus 15% |

### FEES

Services will be performed on a time and material basis, or as stated in Notes. Authorization Form to perform work follows:

**Authorization for work to be performed follows for your signature and return to this office:**

## AUTHORIZATION FOR WORK TO BE PERFORMED

Should this scope of work, as described, meet with your approval, you may authorize the work to proceed by signing a copy of this proposal and returning it to our office. Should you believe that a modified scope of work might better meet your current needs, please call our office at ___209/388-9933.___ The attached ___CTE Cal, Inc. Standard Terms and Conditions___ shall govern this agreement.

The opportunity to present this proposal is appreciated and we look forward to working with you.

_____

**Authorized Signature**

**Printed Name**

**Title**

**Date**

# Exhibit 4



November 26, 2013,

CTE; Contact: Kirt Lamb
242 West Larch Road, Suite F
Tracy, CA 93033

RE:

| Project No: | W91238-13-C-0012 |
|---|---|
| Contract Name: | 785- Dining Facility – Monterey |

**Subject: LETTER OF INTENT TO AWARD SUBCONTRACT**

Congratulations, your firm is the successful bidder on the above referenced project.  It is the intent of Halbert Construction Company to incorporate the services of your firm based on your proposal Dated **11-11-13**, the bidding documents dated **4-30-13** and our discussions regarding the above referenced project for the negotiated price of **T&M** for the following: **Testing and Inspection**

We are issuing this Letter of Intent to expedite the preparation and planning phase of your work.  In order to insure a successful project, please direct your immediate attention to the following items:

1. Additional Plans can be downloaded directly from Halbert Construction web site (www.halbertco.com)
2. Immediately commence preparation of submittals and shop drawings to be submitted within 7 days.
3. Within 3 days, please submit a schedule of values for billing purposes.
4. Within 5 days, please submit a copy of your firm's safety program (AHA) and any Material Safety Data Sheets (MSDS) that relate to your work scope for this project (if applicable).
5. Subcontractor must immediately contact Sarah at our office about acquiring badging information for all employees and vendors that will be performing work and or deliveries on site.

**Your Contacts on site are as follows:**

| | | | |
|---|---|---|---|
| **PROJECT MANAGER:** | **KENNETH STEIDL** | KSTEIDL@HALBERTCO.COM | **(619)-971-0199** |
| **SAFETY OFFICER SSHO:** | **MATT JAMES** | LMATTOJAMES@GMAIL.COM | **(831)-333-6190** |
| **OFFICE MANAGER:** | **SARAH BUNNEY** | SBUNNEY@HALBERTCO.COM | **(619) 593-3527** |
| **PROJECT ENGINEER:** | **JAMES BROWNFIELD** | JBROWNFIELD@HALBERTCO.COM | **(619) 593-3527** |

Thank you for your cooperation and we look forward to working with CTE on this project.

**330 S. Magnolia Ave # 203, El Cajon, CA 92020**          **(619) 593-3527 *(619) 447-4292**



Respectfully,

James Brownfield
Project Engineer
Halbert Construction Company, Inc.
(619) 593-3527
Jbrownfield@halbertco.com