UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *for the Use and Benefit of*: MCCULLOUGH PLUMBING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HALBERT CONSTRUCTION COMPANY, INC., et al,<br><br>Defendants.<br><br>AND RELATED CROSS-CLAIM, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINTS. | Case No.: 17-CV-803-CAB-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT HALBERT CONSTRUCTION COMPANY, INC.'S MOTION TO COMPEL**<br><br>**[ECF NO. 47]** |

## **I. <u>INTRODUCTION</u>**

Presently before the Court is a discovery dispute between Halbert Construction Company, Inc. and The Guarantee Company regarding the disclosure of reports completed by a third-party consultant. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

/ / /

1

## II. RELEVANT BACKGROUND

Defendant, Counter-Claimant, and Cross-Defendant Halbert Construction Company, Inc. ("Halbert" or "Defendant") entered into a subcontract with Plaintiff and Counter-Defendant McCullough Plumbing, Inc. ("McCullough" or "Plaintiff") to perform plumbing work on a federal construction project ("Project"). (Compl., ECF No. 1 at ¶ 12.) Halbert filed a claim with McCullough's surety, Third-Party Defendant The Guarantee Company ("TGC"). (Mot., ECF No. 47 at 2:21-23.) TGC hired Benchmark Consulting Services, LLC ("Benchmark") to investigate the claim filed by Halbert. On a date unknown by the Court, Benchmark prepared and submitted documents to TGC regarding the investigation. (Mot. at 3:1-2.) However, no formal report was completed by Benchmark. (*See* ECF No. 54 a ¶ 2.)

On April 10, 2017, John Brannon of Halbert requested, from TGC, copies of the materials created by Benchmark during Benchmark's investigation. (Mot. at 3:2-4.) On April 12, 2017, the request was approved and Benchmark shared photographs, photograph descriptions, and numerous emails between people from Benchmark, TGC, and McCullough Plumbing with Halbert. (*Id*. at 3:4-6.) On April 20, 2017, McCullough filed its Complaint against Halbert and Western Surety Company, Halbert's payment bond surety. (Compl. at ¶ 5.) On June 28, 2018, Halbert issued a subpoena *duces tecum* on Benchmark, seeking all documents and communications related to the subject project. (Mot. at 3:10-11.) TGC objected to the production of numerous documents, citing the attorney work-product doctrine. (Third-Party Def's Opp'n, ECF No. 48 at 2:1-4.)

On August 8, 2018, counsel for TGC and Halbert alerted the Court to a pending discovery dispute regarding the production of Benchmark's reports. The Court convened a telephonic discovery conference and found further briefing was necessary to resolve the dispute. (*See* ECF No. 44.) The parties timely filed the present motion and opposition. Additionally, the parties lodged, for *in camera* review, the privilege log TGC served on Halbert, the documents provided to Halbert, and the documents withheld from Halbert.

Finding again that further briefing was necessary, the Court ordered TGC to file

supplemental briefing that articulated its normal business practices when litigation is not anticipated and to lodge any final report or work product completed by Benchmark as well as a copy of the subpoena served on Benchmark. (*See* ECF No. 52.) On September 7, 2018, TGC filed its supplemental briefing as well as the subject subpoena. (*See* ECF Nos. 53-54.) The Court reviewed the documents submitted and determined that TGC clearly had over-designated documents as being protected by the work-product doctrine in large measure because a great number of the documents already had been turned over to Halbert. (*See* ECF No. 55.) The Court ordered TGC to serve on Halbert a new privilege log that was responsive to Halbert's subpoena that identified only documents that were protected. (*See id*.) The Court also ordered TGC to submit the same privilege log and all of the documents for *in camera* review. (*See id*.) On September 19, 2018, TGC timely lodged its new privilege log and documents for review.

### III. LEGAL STANDARD

"The attorney work-product privilege protects from discovery in litigation mental impressions, conclusions, opinions, or legal theories of a party's attorney that were prepared in anticipation of litigation or for trial." *American Civil Liberties Union of Northern California v. U.S. Dept. of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (internal quotation omitted). "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Id*. at 484. "It is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation." *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545, 549-50 (W.D. Wash. 2004).

Dual purpose documents are analyzed differently. A dual purpose document is one that serves "both a non-litigation and a litigation purpose." *ACLU*, 880 F.3d at 485. The Ninth Circuit has adopted the "because of" test for dual purpose documents. *See In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). "A dual purpose document is considered prepared or obtained because of the prospect of

litigation if it would not have been created in substantially similar form but for the prospect of litigation." *ACLU*, 880 F.3d at 485-86 (internal quotation omitted). When examining dual purpose documents, the "'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document." *In re Grand Jury Subpoena*, 357 F.3d at 908. A Court should consider the "totality of the circumstances and afford[] protection when it can be fairly said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of" the litigation. *Id*.

"The privilege derived from the work-product doctrine is not absolute" and "it may be waived." *U.S. v. Nobles*, 422 U.S. 225, 239 (1975). "Disclosing privileged communication … results in waiver as to all other communication on the same subject." *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). Additionally, in certain circumstances, an "attorney's compilation of various documents, each of which is itself a proper subject of discovery, constitutes an attorney's opinion work product subject to protection." *Shapiro v. U.S. Dept. of Justice*, 969 F.Supp.2d 18, 31 (D.D.C. 2013) (internal quotation omitted). However, "compilations that merely reflect information, which is already or may be available to an adversary, or has no implications for the adversary process, are not entitled to protection." *Id*. at 32 (citing *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1016 (1st Cir. 1988); *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410-11 (S.D.N.Y. 2009); *SEC v. Strauss*, No. 09 Civ. 4150, 2009 WL 345204, at *10 (S.D.N.Y. 2009).

The party asserting the work-product doctrine bears the burden of showing that it applies. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992); *see also Toranto v. Jaffurs*, No. 16-CV-1709-JAH-NLS, 2018 WL 3546453, at * 2 (S.D. Cal. July 24, 2018).

## IV. DISCUSSION

Halbert makes two distinct arguments as to why the documents should be turned over. First, Halbert argues that Benchmark was hired in the ordinary course of business

and, as a result, the work-product doctrine does not apply. Second, Halbert argues that even if the work-product doctrine applies, TGC has waived the protection by producing portions of the documents generated by Benchmark.

Halbert argues that, pursuant to California Insurance Code § 790.03, TGC's surety was obligated to conduct an appropriate investigation of Halbert's claims. (Mot. at 4:15-18.) Halbert argues that TGC was simply following its statutory duty to investigate the claim by retaining Benchmark, regardless of the potential litigation. (*Id.* at 22-26.) Given this, Halbert concludes that the documents are not dual purpose because they would have been created in substantially similar form without the prospect of litigation.

TGC argues that Halbert "confuses [TGC]'s obligation to investigate claims by assuming that this obligation necessitates hiring a consultant[.]" (Opp'n at 3:26-4:1.) TGC claims it was under no obligation to hire outside consultants and did so "in contemplation of litigation" given "the likelihood of competing claims[.]" (*Id.* at 4:2-5.) Additionally, Jeffrey Jubera, Vice President of Claims for TGC, filed a Declaration which unequivocally states that he "hired Benchmark in anticipation of litigation." (Jubera Decl., ECF No. 48-1 at ¶ 10.) Moreover, TGC completes investigations in-house during its normal course of business. (Supp. Brief, ECF No. 53 at 2:17-22.)

Neither of the parties' arguments are on point, and the Court need not address them because Halbert already has most of the documents previously and currently withheld by TGC. The confusion is due to TGC misclassifying documents as being covered by the work-product doctrine. TGC previously declared 130 documents as being covered by the attorney work-product doctrine and served on Halbert a privilege log identifying numerous photographs, invoices, and emails. Despite the privilege log, TGC went ahead and disclosed to Halbert a substantial number of these purportedly protected documents. However, having received a great number of documents, including photographs, invoices, and emails, Halbert was naturally curious why so many additional documents of a similar nature were now being declared protected by the work-product doctrine and raised the present dispute. After conducting a thorough review, the Court found the obvious problem:

TGC declared a large body of documents protected even though many had *twice* been produced to Halbert.[1] This initial, and grossly inaccurate, identification of documents being protected pursuant to the attorney work-product doctrine has not only caused confusion with the parties but has cost Halbert and the Court hours of unnecessary work. TGC also had to engage in further review of its documents to correct this inaccurate identification. Had TGC simply done the appropriate level of work necessary at the outset, two subsequent document productions, motion work by Halbert, and document review by the Court would not have been necessary.

This brings the Court to TGC's latest lodgment of documents that are being declared protected.[2] It is once again disappointingly clear that TGC failed to undertake a serious review of the withheld documents and has unjustifiably designated the overwhelming majority of the eighty-one identified documents as attorney work-product.

First, many of the documents contain email strings which are duplicated in subsequently tabbed sections with the addition of one or more responsive email(s).[3] The redundancy of these emails shifted the responsibility of review from TGC to the Court to determine the legitimacy of the claimed discovery protections, causing the Court to needlessly review the same emails multiple times.

Second, many of the documents contain emails in which Halbert is either the author or a recipient.[4] Obviously, any protection is lost when the adversary is included in the conversation. *Hernandez*, 604 F.3d at 1100.

---

[1] All of the photographs were produced to Halbert before the litigation commenced as well as result of the subpoena.

[2] The first two documents included in the latest lodgment are designated as being shielded by the attorney-client privilege. The parties raised the present dispute over documents designated as work product. The Court does not know if the parties have met and conferred on these newly added documents. Accordingly, the Court will not consider the documents listed as document nos. 1 and 2 on Benchmark's privilege log and they are not subject to this Order.

[3] Document nos. 11, 12, 15-18, 22-24, 33, 42-44, 47, 50-52, 53-54, 56-57, 62-64.

[4] Document nos. 20, 50-52, 54, 56-57, 62-64, 67, 71.

Third, many of the documents are nothing more than emails to schedule meetings with absolutely no mental impressions, conclusions, opinions, or legal theories.[5] Setting that aside, the relevance of these emails is dubious. The Court seriously questions on what remote grounds TGC could even rely to support an argument these are somehow work product. These documents are not protected. *In re Grand Jury Investigation*, 974 F.2d at 1071.

Fourth, many of the documents are emails containing attachments which are compilations of documents.[6] These compilations contain documents that are either authored by Halbert or have already been disclosed to Halbert. Certainly, Halbert's documents cannot possibly be TGC's protected work product, and even if Halbert was not included in the email chain, having previously disclosed the documents to Halbert eviscerates any protection TGC may have had in them. Accordingly, these documents are not protected. *Shapiro*, 969 F.Supp.2d at 31; *Hernandez*, 604 F.3d at 1100.

Fifth, there are two documents with emails between McCullough and its attorney, TGC and its attorney, and Benchmark, which are arguably work product.[7] However, even this is questionable at best. But, these emails have attachments which are unequivocally not work product, but rather are fact discovery, such as photographs or inventory. These documents are not protected. *In re Grand Jury Investigation*, 974 F.2d at 1071.

Lastly, some of the tabbed documents have already been disclosed to Halbert. These documents are not protected. *Id.*[8]

Many of the emails in the eighty-one tabbed sections either appear irrelevant (and possibly not discoverable pursuant to FRCP 26(b)(1) had TGC made the proper objection) or simply are not attorney work product and are underserving of protection from disclosure. Because TGC took the shotgun approach to designation and did not take careful aim at just

---

[5] Document nos. 14-18, 25, 26, 29, 35, 53-55, 59, 66.
[6] Document nos. 3-10, 70, 79, 80.
[7] Document nos. 44, 62.
[8] Document nos. 27, 31

those documents and emails which are at least arguably not discoverable, it has waived any protection that existed, failed to meet its burden that certain documents should be protected, or both. That said, certain documents contained in TGC's lodgments are clearly protected attorney work-product. Accordingly, the Court **DENIES** Halbert's motion as to document nos: 11, 13, 19, 21, 25, 28, 30, 32, 34, 36-41, 42, 43 (with the exception of the attached inventory dated March 22, 2017), 47, 56, 57, 61 (with the exception of the TGC subcontract performance bond), 65-69, and 72. The Court **GRANTS** Halbert's motion to all other documents provided in TGC's most recent lodgment and **ORDERS** all of the documents not articulated above disclosed.

## V. **CONCLUSION**

For the reasons above, Halbert's Motion to compel is **GRANTED IN PART AND DENIED IN PART**. TGC shall produce all documents described above on or before **October 5, 2018**. Should TGC identify specific documents that are truly critical and disclosure as ordered would greatly prejudice it, TGC may move the Court for reconsideration of this Order as to those specific documents only no later than **September 28, 2018**.

**IT IS SO ORDERED**.

Dated: September 25, 2018

_____
Hon. William V. Gallo
United States Magistrate Judge