UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of:<br><br>McCULLOUGH PLUMBING, INC.,<br><br>                              Plaintiff,<br><br>v.<br><br>HALBERT CONSTRUCTION COMPANY, INC. et al.,<br><br>                              Defendants. | Case No.: 17-CV-803-CAB-WVG<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| AND RELATED CROSS-CLAIMS AND COUNTERCLAIMS AND THIRD PARTY COMPLAINT | |

This matter is before the Court on a motion for partial summary judgment filed by Defendant Halbert Construction Company, Inc. ("Halbert"). The motion has been fully briefed, and the Court deems it suitable for submission without oral argument. The motion is denied.

**I.    Background**

Halbert was the prime contractor on a contract with the United States Army Corps of Engineers for work on a dining facility in Monterey, California (the "Project"). In connection with the Project, Halbert and Defendant Western Surety Company ("Western")

1

executed and delivered a payment bond to the United States under the Miller Act, 40 U.S.C. §§ 3131 *et seq.* Plaintiff McCullough Plumbing, Inc. ("McCullough") entered into a subcontract with Halbert to provide plumbing work for the Project (the "Subcontract").

McCullough alleges that Halbert has not paid McCullough for the full value of the labor, services, materials, equipment, and supplies it provided to the Project. In its complaint, McCullough asserted claims against Halbert for breach of the Subcontract and quantum meruit, and against Halbert and Western jointly for recovery on the Miller Act payment bond. McCullough's damages fall into three categories: (1) the unpaid balance of the original Subcontract amount; (2) payment for change orders; and (3) damages resulting from delay[1] in completion of the Project such as extended overhead and personnel costs. Halbert and Western now move for partial summary judgment that based on the language of the Subcontract, McCullough may not recover the third category of damages—those resulting from the delay in completion of the Project.

**II.    Legal Standard**

Although this is a motion for *partial* summary judgment, the familiar summary judgment standard set forth in Federal Rule of Civil Procedure 56 still applies. *See Harper v. City of San Jose*, No. C 09-05758 JW, 2011 WL 7109218, at *1 (N.D. Cal. Mar. 7, 2011) (noting that although Rule 56 does not explicitly refer to "partial summary judgment," "partial summary judgment is inherent in that Rule 56(a) requires a party to identify 'each claim or defense—or the part of each claim or defense—on which summary judgment is sought.'"). Summary judgment (or partial summary judgment) is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[1] The original contract completion date for the Project was January 19, 2015, but the Project was not completed until several years later. There are disputes of fact as to who or what is responsible for the delay, but those disputes are not material to the discrete grounds on which the Court is denying the instant motion.

2

17-CV-803-CAB-WVG

(1986); *see also* Fed. R. Civ. P. 56. To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248). "Under this standard, partial summary judgment "on all or any part of a claim" may be entered as to that portion of the claim. This reasoning extends to damages claims." *Pinnacle Fitness & Recreation Mgmt., LLC v. Jerry & Vickie Moyes Family Tr.*, 844 F. Supp. 2d 1078, 1093 (S.D. Cal. 2012).

**III.  Discussion**

Halbert's sole argument for partial summary judgment is that Section 2.4 of the Subcontract prevents McCullough from recovering damages arising out of delays to the Project. Section 2.4 of the Subcontract states:

> **No Damage for Delay.** Should Subcontractor's performance be delayed, hindered, interfered with, or otherwise disrupted by any act of the Contractor, other subcontractor(s) or supplier, whether avoidable or unavoidable, reasonable or unreasonable, or foreseeable or unforeseeable, Subcontractor's sole and exclusive remedy shall be an equitable time extension for the performance of the work. This exclusive remedy shall apply only if Subcontractor properly notifies the Contractor, in writing, of the cause of delay within seven (7) days of the occurrence of the event, and provided a similar extension of time is allotted to the Contractor by the Owner under the Contract Documents. Subcontractor shall not be entitled to and hereby expressly waives any claim for any increase in the subcontract price or for additional damages or compensation as a consequence of such delays, unless such delays are payable for under the terms and conditions of the Contract Documents.

[Doc. Nos. 1 at 21; 65-1 at 16.][2] In opposition, McCullough argues that the Miller Act renders this No Damage for Delay clause void.[3] As one district court recently noted, "the availability of a 'no damages for delay' . . . defense for a surety is a field of law that is rapidly evolving. No published or controlling Circuit authority squarely addresses the enforceability of no-damages-for-delay clauses by sureties, and courts within this district are divided on this question." *United States for the Use and Benefit of Manganaro Midatlantic LLC v. Grimberg/Amatea JV*, Civil No. PX-16-2816, 2018 WL 3818876, at *2 n.1 (D. Md. Aug. 10, 2018) (internal citations and quotation marks omitted).

Aside from acknowledging it as a grounds for subject matter jurisdiction, Halbert ignores the Miller Act in its motion and argues only that the No Damage for Delay clause is enforceable under California law. "The Miller Act, [however], provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal, not state law." *United States for Use and Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1206 (9th Cir. 2002) (quoting *F.D. Rich Co., Inc. v. United States ex rel. Indust. Lumber Co., Inc.*, 417 U.S. 116, 127 (1974)). Thus, whether McCullough is entitled to recovery from the Miller Act payment bond of costs caused by delays on the Project is a question of federal, not California law. As a result, the enforceability of the No Damage for Delay clause under California law is relevant only if the clause complies with the Miller Act because "the liability of a surety and its principal on a Miller Act payment bond is coextensive with the contractual liability of the principal only to the extent that it is consistent with the rights and obligations created under the Miller Act." *Id.* Put differently, if the No Damage for Delay clause is void under the Miller Act, it is irrelevant that it is enforceable under California law. Accordingly, the first step

---

[2] Pinpoint cites to documents in the record are to the ECF page number in the watermark at the top of the page.
[3] McCullough also argues alternative grounds why the No Damage for Delay clause does not preclude recovery. Because, as discussed herein, the clause is void under the Miller Act, these alternative grounds need not be addressed here.

4

in the analysis of Halbert's motion is whether the No Damage for Delay clause complies with the Miller Act.[4]

"It is well settled that the Miller Act provides security for those furnishing labor and materials on government projects and should be construed liberally to effect this object." *United States for the use of Youngstown Welding & Eng'g Co. v. Travelers Indem. Co.*, 802 F.2d 1164, 1166 (9th Cir. 1986); *see also Taylor Constr. Inc. v. ABT Serv. Inc.*, 163 F.3d 1119, 1122 (9th Cir. 1998) ("The policy behind the Act is 'to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material.") (quoting *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 217 (1957)). "The Act 'represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings.'" *Mai Steel Serv., Inc. v. Blake Constr. Co.*, 981 F.2d 414, 416-17 (9th Cir. 1992). To this end, the Miller Act states:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133(b). As further protection, section 3133(c) limits the manner in which this right may be waived, stating that "[a] waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is—(1) in writing; (2) signed by the person whose right is waived; and (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract."

---

[4] Halbert's failure to address this threshold issue in its motion is grounds alone to deny summary judgment.

40 U.S.C. § 3133(c). Further, "federal courts have been uniform in their insistence that a waiver be clear and explicit." *Youngstown Welding*, 802 F.2d at 1166.

"[I]ncreased out-of-pocket costs caused by construction delays fall within the intended coverage of the Miller Act. Thus, a subcontractor may recover these costs from a Miller Act surety." *Mai Steel Serv., Inc. v. Blake Constr. Co.*, 981 F.2d 414, 418 (9th Cir. 1992); *see also United States ex rel T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex.*, 942 F.2d 946, 951(5th Cir. 1991) ("[A] subcontractor can recover increased out-of-pocket costs for labor and materials furnished in the course of performing its subcontract caused by contractor or government delay."). Halbert does not argue that the No Damage for Delay constitutes a valid Miller Act waiver of McCullough's right to recover these increased costs. Instead, Halbert argues that the No Damage for Delay clause concerns the measure of McCullough's recovery, relying on the statement in *Walton Technology* that "[c]onsiderable differences exist between a case in which the *measure of recovery* in a Miller Act case is determined by reference to the subcontract terms governing how work performed under the subcontract will be compensated and one in which the timing of recovery, and, in some cases, the right of recovery under the Miller Act is dictated by such terms." *Walton Tech.*, 290 F.3d at 1207 (*emphasis* in original).

Halbert contends that the No Damage for Delay clause merely states that the measure of McCullough's recovery for any delays caused by circumstances outside of its control is limited to "an extension of time." Other district courts have rejected this argument. *See, e.g., United States on behalf of Kitchens To Go v. John C. Grimberg Co., Inc.*, 283 F.Supp. 3d 476, 482 (E.D. Va. 2017) (holding that surety could not rely on a no-damages-for-delay clause in a subcontract executed before the subcontractor provided any labor on the project because the clause "contravenes both the text and the purpose of the Miller Act"); *Foundation Fence, Inc. v. Kiewit Pac. Co.*, No. 09cv2062 DMS (JMA), 2010 WL 4024877, at *4 (S.D. Cal. Oct. 13, 2010) (noting that *Walton Tech*. treated clauses concerning timing of recovery and those concerning entitlement to recovery the same way: "as 'an implied

waiver of [the subcontractor's rights under the Miller Act.") (quoting *Walton Tech.*, 290 F.3d at 1208).

"Where subcontract terms effect [sic] . . . *the right of recovery* under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict the express terms of the Miller Act." *Walton Tech.*, 290 F.3d at 1207 (*emphasis* added). The No Damage for Delay clause plainly affects McCullough's right to recovery of increased out-of-pocket costs caused by construction delays under the Miller Act. That McCullough would be allowed additional time to complete its work on the Project when it could not complete its work on time through no fault of its own merely means that McCullough will not be liable for the delay liquidated damages to which Halbert would be entitled under section 2.7 of the Subcontract for delays caused by McCullough. Permitting Halbert and Western to use the No Damage for Delay clause to preclude McCullough's recovery from the Miller Act bond of additional costs arising out of delays for which McCullough is not responsible is, in effect, enforcing the provision as an implied waiver of McCullough's rights under the Miller Act.

Indeed, the No Damage for Delay clause expressly states that it constitutes a waiver of any claim for any increase in the Subcontract price as a consequence of delays, and one such claim would be for recovery from the Miller Act bond of costs attributable to such delays. Yet, there is no dispute that the Subcontract was executed before McCullough provided any labor or materials for the Project, contravening the requirements for a valid waiver under the Miller Act. 40 U.S.C. § 3133(c)(3). Moreover, the No Damage for Delay clause does not identify any rights that McCullough may have under the Miller Act payment bond as a predicate for releasing them. Thus, for this additional reason, the No Damage for Delay clause does not constitute a "clear and explicit" waiver of McCullough's Miller Act rights. *Cf. Walton Tech.*, 290 F.3d at 1209 (holding that "pay when and if paid" clause that did not identify any Miller Act rights as being waived pursuant to such clause was not a "clear and explicit waiver of Miller Act rights). Accordingly, the No Damage

for Delay clause is void because it does not comply with the rights and responsibilities created under the Miller Act.

## IV. Conclusion

Under the Miller Act, McCullough is entitled to recover increased out-of-pocket costs resulting from construction delays for which McCullough is not responsible. The No Damage for Delay clause, which states that McCullough is precluded from recovering these costs, is void because it does not satisfy the Miller Act's requirements for a waiver of McCullough's Miller Act right to recover these increased costs. Accordingly, Halbert's motion for summary judgment is **DENIED**.

It is **SO ORDERED**.

Dated: December 17, 2018

Hon. Cathy Ann Bencivengo
United States District Judge