JASON R. THORNTON, SBN 185637
EMAIL: jthornton@ftblaw.com
PATRICK W. MCMANUS, SBN 312290
EMAIL: pmcmanus@ftblaw.com

# FINCH, THORNTON & BAIRD, LLP

ATTORNEYS AT LAW
4747 EXECUTIVE DRIVE – SUITE 700
SAN DIEGO, CALIFORNIA 92121-3107
TELEPHONE: (858) 737-3100
FACSIMILE: (858) 737-3101

Attorneys for Defendant, Counterclaimant and Cross-Defendant
Halbert Construction Company, Inc. and
Defendant Western Surety Company

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the Use and Benefits of:<br><br>McCULLOUGH PLUMBING, INC., a California corporation<br><br>       Plaintiff,<br><br>v.<br><br>HALBERT CONSTRUCTION COMPANY, INC., a California corporation; WESTERN SURETY COMPANY, a South Dakota corporation; and DOES 1-100, inclusive,<br><br>       Defendants.<br><br>AND RELATED CROSS-ACTION. | CASE NO:  3:17-cv-00803-CAB-WVG<br><br>DEFENDANT, COUNTERCLAIMANT, AND CROSS-DEFENDANT HALBERT CONSTRUCTION COMPANY, INC.'S OPPOSITION TO CTE CAL'S MOTION TO EXCLUDE DUPLICATIVE EXPERT TESTIMONY OF MICHAEL D. PATTERSON OR PENNY NEWCOMB KRONBERG<br><br>Assigned to:<br>Hon. Cathy Ann Bencivengo, Courtroom 4C<br>Hon. William V. Gallo, Second Floor<br><br>Date:       June 21, 2019<br>Time:      2:00 p.m.<br>Courtroom:  4C<br><br>Complaint Filed:   April 20, 2017<br>Trial Date:      July 8, 2019 |

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

# I

## INTRODUCTION

CTE Cal, Inc. ("CTE"), paints with a broad brush and oversimplifies the testimony of Halbert Construction Company, Inc. ("Halbert"), and Western Surety Company's ("Western"), experts Michael D. Patterson and Penny Newcomb Kronberg.  CTE attempts to portray the experts' testimony as "duplicative," but omits several key areas of each expert's testimony.  Mr. Patterson and Ms. Kronberg provide similar testimony on basic foundational facts and concepts, but each provides a different conclusion and a different perspective on the quality control system and the role of special inspectors on a federal military project.  Together, Mr. Patterson and Ms. Kronberg will assist the jury in understanding these issues in the context of a complex construction case.

Mr. Patterson will assist the jury generally in understanding the different roles and duties of a subcontractor, special inspector, quality control manager, and superintendent.  He will testify regarding the responsibility which each individual possesses in the quality control process.  Ms. Kronberg will testify as to a special inspector's duties and responsibilities and CTE's specific failures on the Project.  Ms. Kronberg will explain how these shortcomings impacted the Project and Halbert's relationship with the United States Army Corps of Engineers, identify how CTE should have performed inspections, explain the effects of CTE's failure to identify deficient work, and explain how proper inspections would have avoided the need for expensive remediation efforts.  CTE conveniently ignores the differences in these experts' reports, testimony, and credentials.  Mr. Patterson and Ms. Kronberg complement each other's testimony, permitting a jury to have a well-rounded perspective on the quality control process.   Therefore, Halbert and Western respectfully request this Court deny CTE's motion.

FINCH, THORNTON & BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

2

## II

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    Project Background

The United States Army Corps of Engineers contracted with Halbert as the prime contractor to construct a dining facility and administration building at the Presidio of Monterey ("Project").   Doc. No. 88 at 138.  On November 26, 2013, CTE and Halbert entered into an agreement pursuant to which CTE agreed to provide material testing and special inspection services on the Project ("CTE Subcontract").  Doc. No. 88 at 2.  On January 27, 2014, Halbert contracted with McCullough Plumbing, Inc. ("McCullough"), to perform plumbing work on the Project.  Doc. No. 1 at 4, Exhibit A.  Halbert contends McCullough installed a plethora of defective plumbing work on the Project.  Doc. No. 68 at 4-9.  Halbert also contends CTE failed to adequately inspect McCullough's plumbing work and failed to properly report deficiencies regarding the work, constituting a breach of the CTE Subcontract.  Doc. No. 88 at 2.

### 2.    Designation of Mr. Patterson and Ms. Kronberg and Their Reports

On October 19, 2018, Halbert and Western designated Mr. Patterson and Ms. Kronberg as expert witnesses.  Doc. No. 91-2.  Halbert and Western retained Mr. Patterson to provide expert testimony regarding a general contractor's standard of care on a federal project, execution of work on the Project, subcontractor responsibilities, and the division of labor between a superintendent, quality control manager, and inspector.  *Id.*  Halbert and Western retained Ms. Kronberg to provide expert testimony regarding the duties and responsibilities of quality control personnel and inspectors, the role of quality control and quality assurance on a federal project, and the division of labor between quality control personnel and inspectors.  *Id.*  Halbert and Western produced both expert reports on February 8, 2019.  Doc. Nos. 91-3 and 91-5.

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive · Suite 700
San Diego, CA 92121
(858) 737-3100

3

3:17-cv-00803-CAB-WVG

1    The two reports demonstrate the differences in Mr. Patterson and Ms.

2    Kronber's opinions.  The differences arise from each expert's different

3    background, experience, and knowledge of the quality control process.

4        3.    <u>Mr. Patterson's Report</u>

5        Mr. Patterson, an expert with over twenty-five years of experience working

6    for general contractors on federal military projects, drafted a report regarding the

7    hierarchy of individuals involved in the quality control process.  Doc. No. 91-3.

8    The report provides a general framework for the roles, duties, and division of

9    labor between the four different entities involved in the quality control process:

10   (1) subcontractor, (2) inspectors, (3) quality control manager, and (4)

11   superintendent.

12       The highlights of Mr. Patterson's report include:

13   "General contractors generally do not have the technical expertise
     that is required to perform special inspections and other quality
14   control activities…. Therefore it is common for federal contracts to
     require general contractors to award special inspection and quality
15   control work to testing and inspection firms such as CTE…." Doc.
     No. 91-3 at p. 4-5.
16
     "[T]here is a hierarchy with respect to quality control on a federal
17   project.  In short, based on the hierarchy, the general contractor's
     superintendent and quality control manager are not responsible for
18   technical field observations and documentation of work performed.
     Instead, they fulfill their responsibility for quality control by
19   ensuring special inspectors are on-site and that the special inspectors
     observe the technical work." *Id*. at p. 5)
20
     "[T]he superintendent relies on reports received from special
21   inspectors because the inspectors possess the requisite technical
     knowledge to inspect trade work and identify deficiencies." *Id*. at p.
22   6.

23   "A qualified subcontractor performs its duties day in and day out
     and is uniquely qualified to understand all aspects of its work and
24   have intimate knowledge of the contract requirements….[and] fully
     knows the applicable codes as well as the plans and specifications
25   for any particular project and is undistracted by other trade
     knowledge." *Id*. p. 9.
26

27   / / / / /

28   / / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

4

3:17-cv-00803-CAB-WVG

Mr. Patterson concluded that the "ultimate responsibility" for properly performing plumbing work per the Project specifications lies with the most qualified entity on the project, McCullough. *Id.* at p. 10. McCullough possessed superior knowledge in the plumbing discipline and was engaged in full-time performance of the work. *Id.* The next most responsible party was the special inspector, CTE, since it had specialized technical knowledge and was in the best position to recognize and report defective/non-compliant work. *Id.* Finally, Halbert's superintendent and quality control manager held the least amount of responsibility for identifying defective work because they did not possess the specialized qualifications of a special inspector, and were justified in relying on the special inspectors to report deficiencies. *Id.* at p.10-11.

Patterson provides the jury with the basic framework of the hierarchy on a federal military construction project, so the trier of fact has a understanding of the roles and duties for each entity, putting the trier of fact in a position to apply the acts and omissions of CTE to that framework to assess liability.

4.   <u>Ms. Kronberg's Report</u>

Ms. Kronberg, an architect with significant construction experience on federal military projects, essentially picks up where Mr. Patterson leaves off. Ms. Kronberg's expertise in managing federal military construction projects, forensic architecture, and damage assessment allowed her to pinpoint the precise actions and shortcomings of CTE's inspections and the impact on the Project. In her report, Ms. Kronberg goes beyond the roles and responsibilities of those involved in the quality control process and explains that CTE did not provide adequately qualified personnel to conduct plumbing quality control inspections and observations. Doc. No. 91-5 at 4. Ms. Kronberg identified a number of

/ / / / /

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

5

3:17-cv-00803-CAB-WVG

specific deficiencies with CTE special inspector Matt Livingston's performance (i.e., Mr. Livingston did not possess the correct plumbing certification, did not observe all work done on the project, and was not qualified to perform quality control). *Id.*

Ms. Kronberg goes on to explain that CTE should have identified and documented deficiencies in the plumbing work performed by McCullough. *Id.* at p. 5. For example, CTE should have recorded the plumbing deficiencies as re-work, which must be tracked by a computerized monitoring system provided by the government. *Id.* She explained that Halbert's quality control manager was responsible for updating the monitoring system, but that the quality control manager relied on CTE's special inspectors to report re-work items into the systems in the first place. *Id.*

Ms. Kronberg also wrote that Mr. Livingston prepared and signed numerous inspection reports that did not note any deficient plumbing, even though McCullough's plumbing work did not comply with the plans and specifications. *Id.* Ms. Kronberg concluded that, as a result of CTE's failure to document and report plumbing deficiencies until after McCullough installed such work, correction of the work was far more expensive than it could have been. *Id.* Ms. Kronberg's report supplements Mr. Patterson's information by providing specific evidence of CTE's shortcomings, and analyzes the significance of CTE's failures within the context of the hierarchy framework set forth by Mr. Patterson.

5.    Mr. Patterson's Deposition

The deposition testimony of the two experts mirrors the different, but complimentary, opinions and viewpoints set forth in their expert reports. The majority of Mr. Patterson's testimony relates to the function, role, and duties/responsibilities of the various positions within the quality control hierarchy. For instance:

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

6

3:17-cv-00803-CAB-WVG

Q: All right. And who [sic] is primarily responsible for ensuring that the work is properly performed between those four people you've identified, which would be the superintendent, quality control manager, inspector, and subcontractor?

A: In my opinion, the subcontractor is primarily responsible.

Doc. No. 91-4 at p. 69, ll. 5-11.

Q: Would you agree with me that inspectors have no authority to dictate how a subcontractor performs its work?

A: The inspector is engaged to ensure the work meets the contract documents. He doesn't have the authority to stop or guide the subcontractor. He would have to work back through the quality control manager.

Q: Okay. So in an instance where the inspector sees a problem, the proper protocol would be to notify the quality control manager who would then be responsible for directing the correction of the problem, true?

A: True.

*Id.* at p. 44, ll. 8-19.

6.    Ms. Kronberg's Deposition

Ms. Kronberg's testimony focused on more specific quality control aspects of the Project from a project management perspective. She was asked, and gave very specific testimony, about the purpose and mechanics of preparatory meetings [Doc. No. 91-6 at 40:3-42:8; 50:24-51:5], preparatory and initial phase meetings [*Id.* at 42:9-44:21], planning meetings in the context of re-work [*Id.* at 51:6-19]; and quality control sequencing and definable features of work in conjunction with initial phase meetings and preparatory phase meetings [*Id.* at 59:5-61:1]. Ms. Kronberg further testified as to the bases of her opinions regarding the lack of qualifications and substandard job performance of Mr. Livingston. [*Id.* at 70:17-25; 72:6-73:13; 77:1-25].

/ / / / /

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

7

3:17-cv-00803-CAB-WVG

For example:

Q: What's the basis for your opinion that Matt Livingston was not qualified to perform plumbing inspections?

A: He did not hold an ICBO plumbing inspector certificate, while Mr. Dempsey, who was submitted int eh QC plan ... as a mechanical inspector, held an ICBO plumbing inspector certificate. So in my opinion, whoever took over for Mr. Dempsey should have been at least as qualified.

*Id*. at 70:17-25

Q: ... [W]hat about Matt Livingston's testimony ... led you to believe that it was inappropriate for him to conduct inspections on another project that was on the Presidio Monterey during the time period of this project?

A: Well ... he was covering a lot of the work.  Not just the plumbing.  He was covering the architectural and many other areas of the work.  You know, I would have expected him to be on site full time in order to adequately cover that work.

*Id*. at 73:3-13.

## III

## LEGAL STANDARD

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  "'Cumulative evidence' is evidence which replicates other admitted evidence." *U.S. v. Ives*, 609 F.2d 930, 933 (9th Cir. 1979), citing *U.S. v. Elksnis*, 528 F.2d 236, 238-39 (9th Cir. 1975).

## IV

## MR. PATTERSON AND MS. KRONBERG'S OPINIONS ARE NOT CUMULATIVE BECAUSE EACH OPINION OFFERS A DIFFERENT PERSPECTIVE ON QUALITY CONTROL

CTE's argument that Mr. Patterson and Ms. Kronberg will present identical opinions is misleading because it relies on a shallow and myopic view

of the evidence.  For example, CTE created a chart which supposedly illustrates that the two experts offer "identical opinions."  See Doc. No. 91 at 5-6.  Conveniently for CTE, however, this chart only includes statements which form the <u>foundation</u> of each expert's opinion, such as a general contractor's reason for engaging a special inspector and the function of special inspectors.  See *Id.*  While Mr. Patterson and Ms. Kronberg ultimately offer different <u>conclusions</u> and <u>perspectives</u>, both expert opinions are related to the quality control process and the role of special inspectors.  Thus, each opinion necessarily arises from the same foundation, i.e., each expert must discuss the same initial matters such as the role of special inspectors on federal construction projects.  CTE overlooks this fact and jumps to the conclusion that both experts offer identical opinions.  This is inaccurate, as demonstrated by a full analysis of each opinion.

The experts' reports and deposition transcripts demonstrate that Mr. Patterson and Ms. Kronberg offer unique conclusions.  Mr. Patterson's opinion focuses on the hierarchy of the individuals involved in the quality control process, and the responsibility each individual bears for discovering defective work.  Doc. No. 91-3.  Mr. Patterson opines as to which party possessed the most responsibility for the deficiencies, based on each party's level of technical knowledge.  *Id.* at 10-11.  In that sense, the gravamen of Mr. Patterson's opinion relates to responsibility for discovery of plumbing defects based on the structure and hierarchy of the quality control system.  See *Id.*

Ms. Kronberg, however, discusses more than the division of responsibility between the parties involved in the quality control process.  Her opinion focuses not just on <u>why</u> CTE was responsible for performing inspection, but also <u>how</u> CTE failed to adequately perform.  Doc. No. 91-5.  Ms. Kronberg discusses what CTE's cope of work on the Project entailed, CTE's failure to employ qualified

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

9

3:17-cv-00803-CAB-WVG

1  personnel, how the special inspectors failed to identify and document defects and

2  track re-work, how the inspectors should have acted to properly perform their

3  duties, and why this failure harmed Halbert.  *Id*.  In this sense, the gravamen of

4  Ms. Kronberg's opinion focuses on CTE's specific failures on the Project.  *Id*.

5      Mr. Patterson's opinion does not discuss CTE's specific failures and how

6  CTE failed to perform its contractual obligations, but rather focuses on CTE's

7  role in the quality control process.  Ms. Kronberg's opinion focuses on CTE's

8  failure to conduct adequate inspections.  Introduction of both opinions would not

9  be cumulative because, in substance, the opinions do not replicate each other.

10  See *Ives*, 609 F.2d at 933.  The opinions make similar foundational assertions,

11  but Mr. Patterson and Ms. Kronberg ultimately come to starkly different

12  conclusions.  Thus, the evidence is not cumulative because each opinion provides

13  arguments and assertions which the other does not.  Similarly, the experts

14  provide different perspectives on the quality control process – Mr. Patterson

15  discusses quality control from the general contractor's perspective while Ms.

16  Kronberg analyzes the government's perspective.  The Court should permit both

17  experts to testify at trial because their unique perspectives will assist the jury in

18  understanding the quality control process.  Therefore, Mr. Patterson and Ms.

19  Kronberg's opinions are not cumulative and the Court should deny CTE's

20  motion.

V

### EVEN IF THE OPINIONS ARE CUMULATIVE, THE COURT SHOULD ADMIT BOTH OPINIONS BECAUSE THEIR PROBATIVE VALUE IS NOT SUBSTANTIALLY OUTWEIGHED BY THE PRESENTATION OF CUMULATIVE EVIDENCE

25      The "probative value" of evidence "may be calculated by comparing

26  evidentiary alternatives."  *Old Chief v. U.S.*, 519 U.S. 172, 184 (1997).  Halbert

27  and Western disagree that Mr. Patterson and Ms. Kronberg will present

28  cumulative evidence.  However, even if that is the case, the Court should permit

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

10

3:17-cv-00803-CAB-WVG

both experts to testify at trial because their opinions are highly probative and the probative value is not substantially outweighed by "the danger of … needlessly presenting cumulative evidence."  FED. R. EVID. 403.

The opinions will provide key insight into the quality control process, the roles and responsibilities of the individuals involved in the process, how CTE failed to adhere to its role in the process, and how CTE's failure harmed Halbert. This information is highly probative and derives from technical and specialized knowledge of the quality control process on federal military projects.  The information bears directly on Halbert and CTE's claims and defenses – the evidence tends to prove or disprove whether CTE was responsible for performing plumbing inspections and whether CTE adhered to its contractual obligations. Also, as demonstrated in the experts' reports and deposition transcripts, the quality control process is highly technical and complicated such that expert witnesses can better explain the process to the jury than percipient witnesses. Expert testimony is necessary to assist the jury in explaining the quality control process and, in turn, CTE's performance on the Project.  In that sense, there are no viable evidentiary alternatives to explain Halbert's claim against CTE other than through expert testimony.  Therefore, both expert opinions are highly probative.

Moreover, the probative value of the opinions is not substantially outweighed by the alleged danger of needlessly presenting cumulative evidence. As discussed above, Mr. Patterson and Ms. Kronberg's opinions are not cumulative because the experts reach completely different conclusions and provide different perspectives regarding the quality control process.  Further, considering the lack of evidentiary alternatives available to explain the quality

/ / / / /

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

11

3:17-cv-00803-CAB-WVG

control process to the jury, the opinions are highly probative to Halbert's claim against CTE.  Therefore, the probative value of the opinions are not substantially outweighed by the alleged presentation of cumulative evidence and the Court should deny CTE's motion.

VI

CONCLUSION

CTE attempts to exclude either Mr. Patterson's or Ms. Kronberg's opinion based on its failure to understand the substance of each expert's opinion.  Contary to CTE's position, the substance of the experts' opinions do not replicate each other.  The experts provide different conclusions and present perspectives regarding quality control, one from a general contracting perspective and the other from a project management perspective.  Once the jury understands the general framework for quality control set forth by Mr. Patterson, a jury is ready to intelligently analyze Ms. Kronberg's testimony, and appreciate how CTE fell below the standard of care, impacting the entire project.  Therefore, Halbert and Western respectfully request that this Court deny CTE's motion.

DATE:  May 17, 2019                    Respectfully submitted,

                                       FINCH, THORNTON & BAIRD, LLP


                                       By:   /s/ Jason R. Thornton
                                             JASON R. THORNTON
                                             PATRICK W. MCMANUS
                                       Attorneys for Defendant, Counterclaimant
                                       and Cross-Defendant Halbert Construction
                                       Company, Inc. and Defendant Western
                                       Surety Company
                                       Email:     jthornton@ftblaw.com
                                                  pmcmanus@ftblaw.com

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

12

3:17-cv-00803-CAB-WVG

1

## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that this document has been filed

3 electronically on this 17th day of May 2019 and is available for viewing and

4 downloading to the ECF registered counsel of record:

5 <u>Via Electronic Service</u>:

6 Kevin T. Cauley, Esq.                ATTORNEYS FOR
  Kristen M. Bush, Esq.             PLAINTIFF AND COUNTER-
7 Alison K. Adelman, Esq.           DEFENDANT
  Schwartz Semerdjian Cauley & Moot LLP  MCCULLOUGH PLUMBING,
8 101 West Broadway, Suite 810        INC.
  San Diego, California 92101
9 Telephone:  (619) 236-8821
  Facsimile:   (619) 236-8827
10 Email(s):    kevin@sscmlegal.com
                kristenb@sscmlegal.com
11               alisona@sscmlegal.com

12 Charles A Alfonzo Esq.           ATTORNEYS FOR
  Gregory D. Brown, Esq.          DEFENDANT,
13 Richard J. Finn, Esq.             COUNTERCLAIMANT AND
  Burnham Brown                CROSS-DEFENDANT
14 1901 Harrison Street, 14th Floor    HALBERT CONSTRUCTION
  Oakland, California 94612        COMPANY, INC.
15 Telephone:  (510) 835-6825
  Facsimile:   (510) 835-6666
16 Email:       calfonzo@burnhambrown.com
                gbrown@burnhambrown.com
17               rfinn@burnhambrown.com

18 / / / / /

19 / / / / /

20 / / / / /

21 / / / / /

22 / / / / /

23 / / / / /

24 / / / / /

25 / / / / /

26 / / / / /

27 / / / / /

28 / / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

13

3:17-cv-00803-CAB-WVG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sean D. Schwerdtfeger, Esq.
Schwerdtfeger Law Group
501 West Broadway, Suite 1700
San Diego, California 92101
Telephone:   (619) 595-3403
Facsimile:   (619) 595-3404
Email:        sds@sdsattorneys.com
                  slr@sdsattorneys.com

ATTORNEYS FOR CROSS-
CLAIMANT AND CROSS-
DEFENDANT CTE CAL, INC.

DATE:  May 17, 2019

Respectfully submitted,

FINCH, THORNTON & BAIRD, LLP


By:___/s/ Jason R. Thornton_____
        JASON R. THORNTON
        PATRICK W. MCMANUS
Attorneys for Defendant, Counterclaimant
and Cross-Defendant Halbert
Construction Company, Inc. and
Defendant Western Surety Company
Email:        jthornton@ftblaw.com
                  pmcmanus@ftblaw.com

2146.006/3EY3152.jld

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

14