Sean D. Schwerdtfeger, Esq. (SBN 179521)
Catherine L. Coughlin, Esq. (SBN 295812)
Sara K. Richards, Esq. (SBN 317603)
SCHWERDTFEGER LAW GROUP
501 West Broadway, Suite 2040
San Diego, CA  92101
Telephone: (619) 595-3403
Facsimile: (619) 595-3404

Attorneys for Cross-Defendant and Counter-Claimant CTE CAL, INC.

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, For the Use and Benefit of: | **CASE NO. 3:17-CV-00803-CAB-WVG** |
| McCULLOUGH PLUMBING, INC., a California corporation, | **CTE CAL INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FRCP RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW** |
| Plaintiff, | |
| v. | Assigned to: Hon. Cathy Ann Bencivengo, Courtroom 4-C Hon. William V. Gallo, Second Floor |
| HALBERT CONSTRUCTION COMPANY, INC. a California corporation; WESTERN SURETY COMPANY, a South Dakota corporation; and DOES 1-100, inclusive, | Complaint filed: April 20, 2017 Trial date: July 8, 2019 |
| Defendants. | |
| AND RELATED CROSS-ACTIONS. | |

///

0

# I.

# INTRODUCTION

On July 8, 2019, a jury of eight (8) persons was regularly impaneled, sworn and agreed to try the claims before it. Percipient and expert witnesses have been sworn and testified, and evidence has been received during the parties' respective cases in chief, with evidence closing on July 17, 2019. The jury is expected to receive instructions, hear closing argument and commence deliberation on July 18, 2019. CTE Cal, Inc. ("CTE") hereby moves pursuant to Federal Rule of Civil Procedure 50 subdivision (a) for judgment as a matter of law as to: (i) CTE's counter-claim against Halbert Construction Company, Inc.'s ("Halbert") for non-payment in the amount of $140,617.00, plus prejudgment interest at a rate of ten percent per annum pursuant to California Civil Code section 3287; and (ii) Halbert cross-claim against CTE for allegedly failing to properly inspect and document the plumbing work during the construction of a dining facility ("DFAC") and administration building ("ADMIN") at the United States Army Garrison, Presidio of Monterey, in breach of the subcontract between CTE and Halbert ("Subcontract"). CTE is entitled to judgment as a matter of law as to both claims because a reasonable jury would not have a legally sufficient evidentiary basis to find for Halbert on either its crossclaim breach of contract claim or on CTE's counterclaim for breach of contract.

# II.

# LEGAL STANDARD

Federal Rule of Civil Procedure 50, subdivision (a), permits a party that has been fully heard on an issue during a jury trial to move for judgment as a matter of law on such issue prior to submitting the cause to the jury for verdict. If the trial court determines that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue … the court may: (A) resolve

the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

Rule 50(a) permits a party to make such motion "at any time before the case is submitted to the jury." Motions for judgment as a matter of law are made at trial and decided on the evidence that has been admitted. *Bill Johnson's Restaurants, Inc. v. NLRB* (1983) 461 U.S. 731, 745, fn.11. The standard is the same as that of a summary judgment motion: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 250. "Judgment as a matter of law is proper when the evidence permits a reasonable jury to reach only one conclusion." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (citation omitted).

Trial courts should grant a motion for judgment as a matter of law if there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it. *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2nd Cir. 2001). Furthermore, when ruling on a motion for judgment as a matter of law, the court must review the entire record, not just evidence favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Products, Inc.*, (2000) 530 U.S. 133, 149-50.

## III.
## LEGAL ARGUMENT

**A. CTE Cal is Entitled to Judgment as a Matter of Law on Its Cross Claim for Breach of Contract against Halbert Construction Company.**

*1. Halbert Construction Company Failed to Pay CTE Cal for Services Rendered in Material Breach of Contract.*

CTE claims that Halbert breached the Subcontract by failing to pay CTE for

services rendered on the Project. To establish this claim, CTE must prove by a preponderance of the evidence that Halbert failed to pay CTE an amount due under the Subcontract.  Halbert and CTE have stipulated that that invoiced and unpaid amount under the Subcontract is One Hundred Forty Thousand Six Hundred Seventeen & 00/100 Dollars ($140,617.00). Halbert and CTE have further stipulated that the invoiced and paid amount under the Subcontract is Six Hundred Fifty-One Thousand Nine Hundred Fifty-Nine & 00/100 Dollars ($651,959.00).

The undisputed evidence introduced at trial demonstrates that CTE Cal and Halbert entered into a written contract pursuant to which CTE Cal agreed to and did perform construction testing and inspection services in exchange for payment on a time and materials basis. (Exhibit Nos. 0410, 0411; Trial Testimony of Kenneth Steidl, Michael P. Halbert, Michelle Mangan, Douglas Barnhart, Rodney Ballard.) In particular CTE and Halbert agreed in their Contract to the following provision regarding Halbert's contractual obligation to pay CTE Cal for services rendered:

> **2. PAYMENT TERMS.** CTE-CAL shall submit monthly invoices for the work performed on the project to Client, and said invoices shall be due and payable upon receipt. No retention shall be held by the Client. ***Client agrees that failure to timely pay these invoices is a material breach of the agreement***. Client agrees that upon its failure to timely pay CTE-CAL invoices, CTE-CAL may suspend its work pending payment, and may elect to terminate without penalty the contract under which Client did not timely tender payment for services rendered. Client agrees that the periodic invoices are presumed to be correct, conclusive, and binding on Client unless Client notifies CTE-CAL in writing of alleged inaccuracies, discrepancies, or errors in the billing within ten (10) days after receipt of such invoices.

(Ex. No. 0410; emphasis supplied.) The plain language of the Subcontract makes clear that Halbert was contractually precluded from withholding payment after services were performed and invoiced by CTE Cal, and that Halbert's failure to timely pay invoiced amounts would constitute a material breach of the Subcontract.

On direct examination at trial, Michael Halbert acknowledged under oath that he received invoices from CTE Cal for services rendered on the Project from January 2017 through and including October 2017. Michael Halbert further testified that he made the decision on behalf of Halbert to withhold payment from CTE Cal because he believed the invoices were not "fair." Rod Ballard testified under oath that such belief was never communicated to CTE orally or in writing. There is no dispute that the unpaid CTE invoices are based upon time spent (services actually rendered) on the Project by CTE.

2. *CTE Cal Is Entitled to Prejudgment Interest Damages Pursuant to California Civil Code section 3287.*

CTE specifically pled its claim for prejudgment interest in its counterclaim for breach of contract. Should CTE prevail against Halbert on its counterclaim for nonpayment, CTE will formally move the Court for an award of such prejudgment interest damages prior to the actual entry of the judgment in this litigation. CTE is entitled to prejudgment interest damages on the unpaid amounts due and owing under the Subcontract at a rate of ten percent per annum calculated on each monthly unpaid invoice to compensate CTE for both the direct monetary loss caused by Halbert's nonpayment and the associated loss of use of said money. Civ. Code § 3287; see also *North Oakland Medical Clinic v. Rogers*, 65 Cal.App.4th 824, 826 ("The purpose of prejudgment interest is to compensate plaintiff for loss of use of his or her property.").

**B. CTE Cal is Entitled to Judgment as a Matter of Law on Halbert Construction Company's Counter Claim for Breach of Contract.**

1. *There is No Evidence to Support a Finding of Breach.*

Halbert claims that CTE, and in particular CTE inspector Matt Livingston, breached the Subcontract by failing to adequately document and report inadequate and defective plumbing work installed by McCullough Plumbing, Inc. ("McCullough"). To recover damages for breach, Halbert must prove all of the

following by a preponderance of the evidence that: (i) Halbert did all, or substantially all, of the significant things the Subcontract required it to do or was excused; (ii) all conditions required by the contract for CTE's performance occurred; (iii) CTE failed to do something that the contract required it to do; and that Halbert was harmed by the breach in a manner that was reasonably foreseeable.

The evidence presented at trial in support of, and in defense to, Halbert's breach of contract claim against CTE permits a reasonable jury to reach only one conclusion: that CTE did not breach any of its obligations under the Subcontract. The undisputed evidence demonstrates that CTE agreed to perform construction testing and inspection services on the Project on a time and materials basis. (Trial Exhibit Nos. 0410, 0411; Trial Testimony of Michael Halbert, Rodney Ballard, Douglas Barnhart.) The undisputed evidence proves CTE and Halbert agreed to the following pertinent terms and conditions:

> **11. NO FIELD DIRECTION**: Client understands that CTE-CAL's field personnel provide technical assistance to Client at the project site, and that CTE-CAL will not perform construction supervision, construction management or otherwise direct or oversee construction or the work. Client shall inform all contractors and subcontractors that CTE-CAL is providing technical assistance and is not directing the work.
>
> …
>
> **14. PROFESSIONAL LIABILITY**: CTE-CAL agrees to perform its testing, inspection, and/or engineering services in accordance with the written proposal, these Standard Terms and Conditions, and the custom and practice in the industry in place at the time the services were rendered, and in the geographic local in which the work was performed. Client understands and agrees that CTE-CAL performs testing and inspection services upon request by Client, and that unless Client specifically notifies CTE-CAL that particular testing and inspection is required, CTE-CAL assumes no responsibility to insure that any particular testing or inspection services are needed or performed. Client agrees to limit CTE-CAL's liability to Client and to all contractors and subcontractors on the project, in total due to alleged professional negligence, CTE-CAL's acts, errors, or

**CTE CAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FRCP RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**

> omissions, and breaches of contract. to the sum of Ten
> Thousand Dollars ($10,000) or CTE-CAL's total
> invoiced and paid fee on the project, whichever is
> greater.

(Trial Ex. No. 410.) The evidence is undisputed that each of these contractual provisions were agreed by CTE and Halbert and are specifically enforceable in California. *Sass v. Hank*, 108 Cal. App. 2d 207, 211 ("Parties have a right to require their contracts to be in writing. When an agreement has been thus reduced the contractor has the right to rely strictly upon the written word.") With regard to conditions, CTE must prove the existence by a preponderance of the evidence that the parties agreed that CTE was not required to perform testing and inspection unless Halbert specifically notified CTE that: (i) special inspection and testing was required; and (ii) the work was ready for special inspection and testing.

The evidence is undisputed that the parties agreed to the following provision of the Subcontract:

> Client understands and agrees that CTE-CAL performs
> testing and inspection services upon request by Client,
> and that unless Client specifically notifies CTE-CAL that
> particular testing and inspection is required, CTE-CAL
> assumes no responsibility to insure that any particular
> testing or inspection services are needed or performed.

(Ex. No. 410.) Upon such showing, the burden shifts to Halbert to prove by a preponderance of the evidence that the condition was satisfied. If such burden is not met, then CTE's performance under the subcontract was excused.

The record is completely devoid of evidence at trial showing that Halbert expressly requested particular testing and inspection pertinent in this case. By way of example, there is no evidence that CTE was requested to provide testing and inspection in connection with the placement of the floor sinks or the propriety of the underground plumbing repairs in the DFAC after the placement of the structural steel and subsequent plumbing damage. The lack of any record evidence to support such jury finding compels judgment as a matter of law as to Halbert breach of contract claim against CTE Cal.

2.   *Halbert's Claimed Breach of Contract Damages Are Speculative.*

CTE acknowledges the general California rule that the measure of damages for breach of a fixed price construction contract by a subcontractor's failure to properly perform entitles the contractor to remove the subcontractor from the project, hire another subcontractor to repair, correct and finish the work, and hold the first subcontractor liable for the difference between the contract price and the actual total cost of completing the work. Cal. Civil Code § 3300; Cal. Constr. L. Manual § 1:72. Cost of correction; cost of completion.[1] The underlying principle is that the promisee should get the job it bargained for at the price it bargained for. This rule is inapplicable where the parties have agreed to payment on a time and materials basis because the servicing party is not paid in advance for the work. In other words, cost to complete damages are not recoverable where performance is invoiced on a time and materials basis.

In California, "damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *Frustuck v. City of Fairfax*, 212 Cal.App.2d 345, 367-368 (1963); *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc*., 209 Cal. App. 4th 1118, 1132–33 (2012). Unless a statute otherwise specifically provides, the proper measure of damages for the breach of a contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Civ. Code, § 3300. Halbert has presented evidence to support a claim of damages comprising the cost of repairing the damaged plumbing and the cost of completing the plumbing work totaling $2,021,905.51. Halbert's breach of contract claim as against CTE Cal fails for

---

[1] ("For example, suppose K agrees to build a residence for O for $250,000. Halfway through the job, O discovers that K's work is defective. K refuses to make corrections. O has paid K $200,000. O now ejects K from the job, and employs another contractor to complete the work according to the original plans and specifications. O must pay the new contractor $140,000. Therefore, the total cost of the job is $340,000. But if K had performed the contract as agreed, O would have had its house for $250,000. The damages, therefore, are $90,000. The same measure of damages would apply to a breach between a subcontractor and a prime contractor.").

want of non-speculative damages: the evidence presented at trial demonstrates that Halbert is unable to distinguish the cost to correct from the cost to complete the damaged and unfinished plumbing on the Project as invoiced by Certified Air and other subcontractors. (Trial Testimony Mike Luongo, Michael Halbert, Michelle Mangan.) As a result the 2+ million dollar damages amount is wholly speculative and unrecoverable.

3. *The Amount of Halbert's Claimed Breach of Contract Damages Are Limited by the Terms of the CTE Cal-Halbert Subcontract.*

The undisputed evidence at trial demonstrates that CTE Cal and Halbert agreed in the CTE Cal-Halbert subcontract to a cap on damages recoverable from CTE Cal as follows:

> **14. PROFESSIONAL LIABILITY**: CTE-CAL agrees to perform its testing, inspection, and/or engineering services in accordance with the written proposal, these Standard Terms and Conditions, and the custom and practice in the industry in place at the time the services were rendered, and in the geographic locality in which the work was performed. Client [Halbert] understands and agrees that CTE-CAL performs testing and inspection services upon request by Client, and that unless Client specifically notifies CTE-CAL that particular testing and inspection is required, CTE-CAL assumes no responsibility to insure that any particular testing or inspection services are needed or performed. Client agrees to limit CTE-CAL's liability to Client and to all contractors and subcontractors on the project, in total due to alleged professional negligence, CTE-CAL's acts, errors, or omissions, and breaches of contract, to the sum of Ten Thousand Dollars ($10,000) or CTE-CAL's total invoices and paid fee on the project, whichever is greater.

(Trial Ex. 410, ¶ 14.) The parties have stipulated to the applicability of the above referenced provision in this case, such that there is an agreed cap on damages for Halbert's breach of contract claim in the amount of $651,959.00, representing the amount paid to CTE for performing under the Subcontract. Should CTE be determined to be liable for breach of contract, CTE is entitled to judgment as a matter of law that such damages are capped at $651,959.00. See *Food Safety Net*

*Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal.App.4th 1118 (2012) ("With respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy.").

### 4. CTE Cannot Be Liable for Delay Under the Subcontract.

The undisputed evidence at trial proves that Halbert and CTE Cal agreed in their subcontract to exculpate CTE Cal from liability for delay damages:

> **5. PROJECT DELAY:** CTE-CAL is not responsible for project delay or damages resulting therefrom caused in whole or part by the activities of Client, contractor, or its subcontractors, or governmental agencies, or by factors beyond CTE-CAL's reasonable control, including but not limited to, delays caused by reason of strikes, accidents, acts of God, weather, or failure of Client to furnish timely information or approval of CTE-CAL's work. CTE-CAL shall not be responsible for any delays caused by the actions and/or omissions of governmental agencies including but not limited to the processing of building permits or Environmental Impact Reports. CTE-CAL shall only act as an advisor to its Client on any governmental relations or approvals.

(Ex. No. 410.)

The enforceability of this provision is undisputed. See *Arcwel Marine, Inc. v. Southwest Marine, Inc.*, 816 F.2d 468, 1988 A.M.C. 2404 (9th Cir. 1987) (no damages for delay clause enforceable). Accordingly, CTE is entitled to judgment as a matter of law as to the non-recoverable delay damages.

## III.

## CONCLUSION

For the aforementioned reasons, CTE respectfully requests this Court to grant judgment as a matter of law as follows:

1) For CTE and against Halbert on CTE's counterclaim for breach of contract in the amount of $140,617.00, plus prejudgment interest pursuant to California Civil Code section 3287; and

///

1   ///

2   ///

3   ///

4       2)   For CTE and against Halbert on Halbert's cross claim for breach of contract

5           in the amount of $0.00, or in the alternative, limiting the damages

6           recoverable according to the limitations on liability set forth in the

7           Subcontract and discussed herein.

8

9   Dated: July 17, 2019                    Respectfully Submitted,

10

11                                 By:    __/s/ *Catherine Coughlin*_____

12                                        Sean D. Schwerdtfeger, Esq.
                                         Catherine Coughlin, Esq.
13                                        Sara K. Richards, Esq.
                                         Attorneys for Cross-Defendant and
14                                        Counter-Claimant CTE Cal, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CTE CAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FRCP RULE 50
MOTION FOR JUDGMENT AS A MATTER OF LAW**